# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00704-MSK-STV

FOUR WINDS INTERACTIVE LLC, a Colorado limited liability company,

Plaintiff,

v.

22 MILES, INC., a California corporation,

Defendant.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant's Motion to Dismiss Amended Complaint (the "Motion") [#60], which was referred to this Court [#63].  This Court has carefully considered the Motion and related briefing, oral argument held on January 6, 2017, the entire case file and the applicable case law.  For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Four Winds Interactive LLC ("FWI") is a visual communications and digital signage software company founded in 2005.  [#59 at ¶ 7]  FWI offers a "full suite" of visual communications solutions directed to the areas of facilities management,

---

[1] The facts are drawn from the allegations in Plaintiff's Amended Complaint, which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

marketing, human resources, and executive management.  [*Id.*]  According to the Amended Complaint, "[t]he core of FWI's software platform and its most important offerings are Content Player and Content Manager."  [*Id.* at ¶ 8]  Content Manager is a program for managing, configuring and deploying any content to any digital screen, "from a fifty-foot video wall to a mobile handheld device."  [*Id.*]  One feature of Content Player and Content Manager is wayfinding, which allows a programmer to generate maps with customized directions from multiple perspectives.  [*Id.*]  Content Manager and Content Player provide users the ability "to fully customize their visual displays in almost any manner they choose."  [*Id.*]  Currently, Content Manager and Content Player are only available to be licensed directly from FWI, pursuant to licensing terms that prohibit copying and reverse engineering.  [*Id.*]

FWI is the owner of U.S. Patent No. 9,037,402, titled "System and Method for Programming and Displaying Directionally Based Textual Wayfinding Content" (the "'402 Patent"), which was issued on May 19, 2015.  [*Id.* at ¶ 12]  The '402 Patent is directed to a method of programming custom wayfinding instructions that are displayed on digital signage.  [*Id.* at ¶ 13]  Claim 1 of the '402 Patent describes "[a] method of programming wayfinding content using a wayfinding data content management system having a processor and a database coupled to the processor."  [#59-1 at 20]  Specifically, Claim 1 includes nine steps allowing a central programmer (the "system manager") to provide directions to an end user using "customized instructional phrases." [*Id.* at 18, 20]

In addition, FWI owns copyrights in original and protected literal (*e.g.*, modules, algorithms and data structures, source code, and object code) and nonliteral (*e.g.*,

program structure, architecture, look and feel, and user interface) elements of Content Manager and Content Player.  [#59 at ¶¶ 14-15]

According to the Amended Complaint, 22 Miles, Inc. ("22 Miles") was founded in 2007 as a human resources staffing company, but "[o]ver the past eight years, and mostly over the past eighteen months, [ ] has apparently migrated into different companies, first offering a rudimentary software product, and more recently a full suite of digital signage products."  [*Id.* at ¶ 21]  22 Miles now "markets and sells software equivalent to Content Manager and Content Player."  [*Id.* at ¶ 37]  FWI and 22 Miles compete for the same customers and 22 Miles has purportedly offered discounts specifically targeted to FWI's customers.  [*Id.* at ¶¶ 18, 20, 22]  FWI contends that it was "surprised" by 22 Miles' entry into the market and "investigated how a relative newcomer could so quickly come to compete with [FWI's] advanced Content Manager and Content Player software offerings."  [*Id.* at ¶¶ 17, 23]

According to the Amended Complaint, one of FWI's longtime partners attended a presentation and demonstration of 22 Miles' content management and wayfinding software in Summer 2015.  [*Id.* at ¶ 25]  Subsequently, the partner informed FWI that 22 Miles' "content management and wayfinding software looked remarkably similar to the FWI competitive platform" and contained "nuances in its user interface that the partner thought were unique to FWI."  [*Id.*]

Separately, in January 2016, one of FWI's existing customers informed FWI that he thought 22 Miles "had FWI software on their desktop" while 22 Miles was presenting its software to him.  [*Id.* at ¶ 26]  The customer told FWI that he "thought that he saw an FWI icon on a 22 Miles computer desktop" and that "it appeared that 22 Miles was

developing [its] platform based on FWI software."  [Id. at ¶¶ 26, 28]  The customer further told FWI that, "if he told 22 Miles that he liked a particular feature of FWI software, 22 Miles would shortly send him a patch that would add that feature to the 22 Miles software."  [Id. at 28]  The customer further told FWI that it was his understanding that 22 Miles buys software of competitors to evaluate it.  [Id.]

FWI further alleges that 22 Miles advertised on its website and on social media that its software was patented.  [Id. at ¶¶ 31, 32]  On information and belief, FWI alleges that 22 Miles is not the owner or assignee of any issued (or pending) United States patent or application for patent.  [Id. at ¶ 34].  Between the filing of FWI's initial complaint in March 2016 and the filing of the Amended Complaint on October 31, 2016, however, 22 Miles allegedly removed all of the references to patented technology from its website and social media account.  [Id. at ¶ 36].

The Amended Complaint asserts five causes of action.  [#59]  In Count One, FWI asserts a claim for patent infringement based upon 22 Miles allegedly (1) directly infringing the '402 Patent, including but not limited to Claim 1 of the patent, by making, using, offering to sell, selling, and/or importing into the United States 22 Miles' content management and wayfinding software; (2) contributorily infringing the '402 Patent by selling to its customers 22 Miles' content management and wayfinding software, which allegedly has no substantial non-infringing use; and (3) inducing the infringement of the '402 Patent by advertising, promoting and providing instructions on how to use 22 Miles' content management and wayfinding software, which allegedly infringes the patent.  [Id. at ¶¶ 78-96]  In Count Two, FWI asserts a claim for copyright infringement, alleging that 22 Miles knowingly, willingly and unlawfully copied, prepared, published, and distributed

original and protected elements of FWI's Content Manager and Content Player copyrighted software. [*Id.* at ¶¶ 98-105]  In Count Three, FWI asserts a claim for unjust enrichment "in the alternative" based upon allegations that 22 Miles reverse engineered or copied the source code for Content Manager and Content Player and "is now using its illicit replication . . . to steal FWI's business." [*Id.* at ¶¶ 107-12]  In Count Four, FWI asserts a claim for unfair competition "in the alternative" based upon 22 Miles allegedly copying "nonfunctional elements" of Content Manager and Content Player to the extent that such nonfunctional elements are not subject to copyright protection. [*Id.* at ¶¶ 114-19]  In Count Five, FWI asserts a claim for false patent marking based upon 22 Miles allegedly marketing its products as "patented" even though 22 Miles does not actually hold any patent related to digital signage. [*Id.* at ¶¶ 121-26]

On November 17, 2016, 22 Miles filed the instant Motion to Dismiss, arguing that: (1) the '402 Patent is not patent-eligible and, even if it were, FWI failed to allege facts sufficient to support a claim for direct, contributory or inducted infringement; (2) FWI failed to allege facts sufficient to allege a claim for copyright infringement or false marking; (3) FWI's unjust enrichment and unfair competition claims are preempted by federal copyright law; and (4) the jurisdictional facts alleged by FWI are insufficient to support the Court's personal jurisdiction over 22 Miles. [#60]  FWI filed a Response to the Motion on December 12, 2016 [#67] and 22 Miles filed its Reply in Support of the Motion on December 23, 2016 [#74].  The Court heard arguments on the Motion on January 6, 2017. [#78, 81]  On January 20, 2017, the parties each submitted supplemental authorities related to the Motion. [#82, 84]

The parties' claim construction briefing is complete but no date has yet been set for a claim construction hearing.  [#89; *see also* #80, 86, 88]

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) empowers a court to dismiss a complaint for "lack of personal jurisdiction."   Personal jurisdiction over FWI's patent claim is analyzed pursuant to Federal Circuit law, whereas Tenth Circuit law controls the analysis with respect to FWI's non-patent-related claims.   *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003).  In both Circuits, "[t]he plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing."  *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011); *see also Silent Drive, Inc.*, 326 F.3d at 1201.  As a result, the pleadings and affidavits are construed "in the light most favorable to the plaintiff."   *Silent Drive, Inc.*, 326 F.3d at 1201 (internal quotation omitted); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."   *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).[2]  Nonetheless, a plaintiff may not rely on mere labels or

---

[2] Because it raises a purely procedural issue, the Federal Circuit reviews "an appeal from an order granting a motion to dismiss for failure to state a claim upon which relief

conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).   Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"   *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."   *Id.* (quoting *Twombly*, 550 U.S. at 556).   The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."   *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.   ANALYSIS

22 Miles moves to dismiss the Amended Complaint on the grounds that (1) the subject-matter of the '402 Patent is not patent eligible; (2) the allegations are insufficient to state a claim for patent infringement, copyright infringement or false patent marking; (3) FWI's unjust enrichment and unfair competition claims are preempted by federal copyright law; and (4) the court lacks personal jurisdiction over 22 Miles.   "Because the

---

can be granted . . . under the applicable law of the regional circuit."   *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

Court must have jurisdiction in order to render a valid judgment, the Court must consider [22 Miles'] personal jurisdiction argument before reaching the merits of the case against [it]." *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1160 (D. Colo. 2010) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998)).

### A.  Personal Jurisdiction

The Court employs a two-part test for examining personal jurisdiction.  First, the Court considers "whether any applicable statute authorizes the service of process on defendants."  *Dudnikov*, 514 F.3d at 1070.  Second, the Court "examine[s] whether the exercise of such statutory jurisdiction comports with constitutional due process demands."  *Id.*; *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).

With regard to the first, neither the federal Copyright Act nor the federal patent laws provide for nationwide service of process.  *Id.* (finding that the Copyright Act lacks a provision providing for nationwide service); *Progressive Games, Inc. v. Amusements Extra, Inc.*, 83 F. Supp. 2d 1185, 1189 n.2 (D. Colo. 1999) (noting that "Congress has not enacted a statute governing personal jurisdiction (nationwide service of summons) in patent infringement cases").  As a result, Federal Rule of Civil Procedure 4(k)(1)(A) "commands the district court [ ] to apply the law of the state in which the district court sits."  *Dudnikov*, 514 F.3d at 1070; *see also Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009).  "Colorado's long-arm statute, in turn, confers the maximum jurisdiction permissible consistent with the Due Process Clause."  *Dudnikov*, 514 F.3d at 1070 (citing *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193

8

(Colo.2005)).   As a result, "the first, statutory, inquiry effectively collapses into the second, constitutional, analysis."   *Id.*; *see also AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) ("'This interpretation obviates the need for [a long-arm] statutory analysis separate from the due process inquiry required by *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945), and its progeny.'" (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo.2002))).

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"   *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).   "Where a defendant's contacts are continuous and systematic, due process permits the exercise of general jurisdiction*."   Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002).   General jurisdiction "confers personal jurisdiction even when the cause of action has no relationship with those contacts."   *Silent Drive, Inc.*, 326 F.3d at 1200.   Specific personal jurisdiction, on the other hand, "must be based on activities that 'arise[ ] out of' or 'relate [ ] to' the cause of action and can exist even if the defendant's contacts are 'isolated and sporadic.'"   *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

Here, FWI alleges only that this Court has specific personal jurisdiction over 22 Miles.[3]   [#59 at ¶ 3; #67 at 30-31]   "[W]hether an exercise of [specific] personal

---

[3] For the first time at the Motion Hearing, counsel for FWI claimed that "general jurisdiction [ ] applies as well." [#81 at 83:12-22]  Arguments raised for the first time at

jurisdiction satisfies due process in a patent case depends on three factors:   '(1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair".'"   *Silent Drive, Inc.*, 326 F.3d at 1201-02 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).[4]

FWI contends that these factors are satisfied because "22 Miles has had communications with approximately ten different entities in Colorado regarding potential sales of 22 Miles' software, which contains available software accused of infringing the '402 Patent and FWI's copyrighted works, for purposes of conducting business in Colorado."[5]   [#67 at 30]   22 Miles does not refute or otherwise address these alleged offers of sale in its Reply to the Response to the Motion.   Instead, 22 Miles argues only that the two actual sales made into Colorado did not include the wayfinding product that allegedly infringes the patent and there are no specific allegations that the products sold into Colorado infringed FWI's copyrights.   [#74 at 24-25]   At this stage of the litigation,

---

oral argument before the magistrate judge, however, are waived.   *Gocha v. Nat'l R.R. Passenger Corp.*, 75 F. Supp. 3d 1304, 1313 (D. Colo. 2014).

[4] The Tenth Circuit has articulated similar factors:   (1) the out-of-state defendant must have "purposefully directed its activities at residents of the of the forum state;" (2) "the plaintiff's injuries must arise out of defendant's forum-related activities;" and (3) the exercise of jurisdiction must be "consonant with traditional notions of fair play and substantial justice."   *Dudnikov*, 514 F.3d at 1071 (internal quotations omitted).

[5] In the Amended Complaint, FWI alleged that 22 Miles had "made at least two direct sales of its infringing software and/or system into the state of Colorado, which upon information and belief also involved . . . installing copies of its infringing software/system in Colorado."   [#59 at ¶3]   In its Response to the Motion, however, FWI concedes that "the two installations identified in the Amended Complaint . . . did not contain an add-on wayfinding module or have wayfinding capabilities."   [#67 at 30 n.8]

the Court thus must credit FWI's contention that 22 Miles has offered products for sale in Colorado that infringe both the '402 Patent and FWI's copyrights.

In offering to sell the allegedly infringing products to Colorado residents, 22 Miles clearly "purposefully directed" commercial activities at residents of Colorado.  The patent laws expressly provide that an "offer of sale" constitutes a violation of the patent laws.  *See* 35 U.S.C. § 271(a) (stating "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent").  22 Miles' attempted sales of a product that allegedly infringes FWI's copyrights also relates to FWI's copyright infringement claim.  FWI's patent and copyright claims thus clearly arise out of or relate to these offers of sale directed at Colorado residents.  *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998) (finding that claim for patent infringement arose out of or related to defendant's sending of price quotation letters); *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 64 (S.D.N.Y. 1993) ("Offering one copy of an infringing work for sale in New York, even if there is no actual sale, constitutes commission of a tortious act within the state sufficient to imbue this Court with personal jurisdiction over the infringers.").  The allegations and affidavits offered by FWI thus are sufficient to establish sufficient minimum contacts to support personal jurisdiction in Colorado for FWI's patent and copyright claims.[6]

"[W]ith minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render

---

[6] Because FWI's claims all arise out of the same set of operative facts, to the extent the Court has personal jurisdiction over 22 Miles for any one of FWI's claims, the Court is vested with pendent personal jurisdiction with regard to the remainder of FWI's claims. *Inamed Corp.*, 249 F.3d at 1362–63; *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002).

jurisdiction unreasonable.'"  *Dudnikov*, 514 F.3d at 1080 (quoting *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)).  "The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that he unfairly is at a severe disadvantage in comparison to his opponent.'"  *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting *Burger King Corp.*, 471 U.S. at 478).

Here, 22 Miles argues only that "it appears the majority of the witnesses and evidence in this case will *not* be located in Colorado."  [#60 at 30 (emphasis in original); *see also* #74 at 24-25]  22 Miles fails to cite any authority to support its contention that the exercise of jurisdiction is unreasonable on this ground.  [*Id.*]  To the contrary, courts have "emphasize[d] that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."  *Peay*, 205 F.3d at 1212 (internal quotation omitted).  "[I]n this age of instant communication . . . and modern transportation, the burdens of litigating in a distant forum have lessened."  *Id.* at 1213 (internal quotation omitted).

Moreover, 22 Miles fails to provide factual support for its conclusory statement.  FWI is a Colorado company with its principal place of business in Colorado.  [#59 at ¶ 5]  22 Miles admits to soliciting business from approximately ten potential customers in Colorado.  [#69-1 at 8]  A significant number of witnesses and documentary evidence thus likely is located within Colorado and any inconvenience posed to 22 Miles by litigating in Colorado likely only equals that which would be imposed upon FWI if it were required to litigate in an alternative forum.

The Court thus concludes that FWI has made a *prima facie* showing of personal jurisdiction and RECOMMENDS that 22 Miles' Motion be DENIED to the extent it seeks dismissal for lack of personal jurisdiction.[7]

### B. Patent-Eligible Subject Matter

22 Miles next argues that FWI's patent claims should be dismissed because the '402 Patent does not address patent-eligible subject matter and thus is invalid.[8]  [#60 at 4-12]   Section 101 of the Patent Act defines the subject matter eligible for patent protection as follows:   "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this

---

[7]  The Court notes, however, that personal jurisdiction "may be reviewed again at subsequent stages in the trial court proceedings as evidence accumulates."  *Dudnikov*, 514 F.3d at 1069 n.3.

[8]  The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 242 (2016).  In fact, "[i]n many cases, [ ] evaluation of a patent claim's subject matter eligibility under [Section] 101 can proceed even before a formal claim construction."  *Id.*  In the initial briefing on the Motion, neither party raised any factual disputes or claim language construction issues relevant to the Court's resolution of patent eligibility.  At the Motion Hearing, defense counsel noted that "neither party directed [the Court] to any specific term . . . in the claims needing construed to resolve the motion."  [#81 at 10:24-11:4;  *see also id.* 86:7-25]   FWI did not voice any disagreement with this argument or identify any specific terms in the claim relevant to the Court's consideration of patent eligibility.  At the Motion Hearing, the Court invited the parties to submit supplemental authorities, but expressly stated that the Court did not want "supplemental briefing."  [*Id.* at 30:20-31:18]  In its supplemental submission, FWI argued for the first time that "the scope and interpretation of" certain terms in Claim 1 "affect the § 101 analysis and any consideration of [the Motion] based on patent ineligibility should be subject to the Court's claim construction."  [#82 at 4]  Although FWI likely has waived this argument by failing to raise it in the initial briefing such that 22 Miles would have an opportunity to respond, the Court's analysis of the patent eligibility of Claim 1 does not rely upon any of the disputed language identified in FWI's supplemental submission.

title." 35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception. [L]aws of nature, natural phenomena, and abstract ideas are not patentable."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc. ("Mayo")*, 566 U.S. 66, 70 (2012) (internal quotation omitted).  At the same time, the Supreme Court has acknowledged that "too broad an interpretation of this exclusionary principle could eviscerate patent law [because] all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 71.

The Supreme Court thus has devised a two-stage framework to determine whether a claim is patent eligible.  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016), *petition for cert. filed*, No. 16-1046 (U.S. Mar. 1, 2017).  At stage one, the Court must determine "whether the claim is directed to a patent-ineligible concept, *i.e.*, a law of nature, a natural phenomenon, or an abstract idea.[9]  *Id.*  If so, at stage two, the Court must consider "whether the elements of the claim, considered 'both individually and "as an ordered combination,"' add enough to '"transform the nature of the claim" into a patent-eligible application.'"  *Id.* (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l ("Alice")*, 134 S. Ct. 2347, 2355 (2014) (quoting *Mayo*, 566 U.S. at 78-79)).

### 1.  Abstract Idea

"The 'abstract idea' step of the inquiry calls upon [the Court] to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a

---

[9] "If the answer is no, the inquiry is over: the claim falls within the ambit of § 101."  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016).

whole' is directed to excluded subject matter." *Affinity Labs of Texas, LLC*, 838 F.3d at 1257.   Although the Federal Circuit has instructed that the Court should consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter," *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015), here, the parties both agree that only Claim 1 of the '402 Patent is at issue and the parties have only briefed the patent eligibility of Claim 1.[10]   [#81 at 8:5-14]

Claim 1 of the '402 Patent is a method claim directed to "[a] method of programming wayfinding content" with customized instructions utilizing a processor coupled with a database.  [#59-1 at 20]  Claim 1 includes the following nine steps:

1. accessing a map file having data on one or more map locations and one or more paths between the map locations representing locations and routes on a map, wherein the paths include path segments intersecting map locations, and wherein the path segments have directional aspects defined by directions of travel relative to the map locations and without a set of limited preprogrammed instruction options explaining the directional aspects;

2. displaying a programming interface on a display device having one or more text entry fields corresponding to path segments arranged and configured to allow a system manager to create and enter customized instructional phrases explaining the directional aspects of the path segments, wherein the text entry fields include at least a first text field for entering a first customized instructional phrase explaining traveling along a path segment toward a first map location, and wherein the text entry fields include at least a second text field for entering a second customized instructional phrase explaining traveling in a different direction along the path segment away from the first location;

---

[10] "[I]t is not the Court's obligation to create legal arguments for [the parties]." *Zahourek Sys., Inc. v. Balanced Body Univ., LLC*, No. 13-CV-01812-RM-CBS, 2016 WL 1377165, at *13 (D. Colo. Apr. 7, 2016); *see also Goodwin v. Bruggeman-Hatch*, No. 13-CV-02973-REB-MEH, 2014 WL 4723916, at *2 (D. Colo. Sept. 22, 2014) (finding that "an issue that is not raised in response to the apposite motions to dismiss or otherwise brought to the attention of the magistrate judge is waived").

3. receiving the customized instructional phrases programmed by the system manager using the programming interface;

4. storing the customized instructional phrases in the database, wherein the customized instructional phrases received by the programming interface are stored with associations linking the customized instructional phrases entered in the text entry fields with the path segment;

5. displaying a map on a display for a user;

6. allowing a user to select an ending map location;

7. calculating a travel route between a starting map location and the user selected ending map location by compiling a sequence of one or more path segments and one or more map locations between the starting and ending map locations;

8. retrieving from the database one or more customized instructional phrases for the path segments associated with the compiled sequence of map locations; and

9. displaying the customized instructional phrases to the user in an order corresponding to the compiled sequence of map locations.

[#67 at 9-10 (emphasis omitted); *see also* #59-1 at 20].

FWI concedes that "the simple process of showing a map, receiving a destination from the user, calculating a travel route, and communicating the directions for that travel route to the user was clearly prior art both in the human and computer realms." [#67 at 11] FWI argues that Claim 1 of the '402 Patent, nonetheless, is not directed at an abstract idea because it "substantially alters and refines that simple process" by requiring that each path segment have a "custom instructional phrase." [*Id.*] As a result, FWI contends that the '402 Patent "is directed to these improvements in the normal operation of a computer—which is patent-eligible." [*Id.*]

The Federal Circuit has refused to adopt a bright-line rule "that all claims directed to improvements in computer-related technology, including those directed to software,

are abstract." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Instead, the Court must ask "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335-36. Here, the focus of the claim is to allow customized directions that may utilize landmarks (such as a store name) whereas traditional mapping programs utilize standard directional and distance instructions. It is beyond dispute that the use of such customized directions within the types of environments at which FWI's products are directed (e.g., shopping malls, airports and convention centers) is commonplace by humans, such as security guards and information kiosk workers. Indeed, even the '402 Patent requires a human "system manager" to create the actual customized directions for each segment. [#59-1 at 20] The software then stores these phrases in a database and retrieves them when a user requests directions between two locations. [*Id.*] FWI's software thus merely invokes the processor with attached database "as a tool" to accomplish the process of providing customized directions—a process that "could be performed via pen and paper or in a person's mind." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 2510 (2016). Courts consistently have held that methods capable of being performed in the human mind or by a human using a pen and paper are directed at a patent-ineligible concept, even when the patent implements the method utilizing a computer. *Id.*; *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016).[11]

---

[11] In *McRo, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016), the Federal Circuit indicated that "processes that automate tasks that humans

FWI contends that the '402 Patent represents an improvement in computer capabilities and thus is patent-eligible under *Enfish*.  FWI's software, however, merely utilizes pre-existing computer processor and database technology to (1) collect customized directions from the "system manager;" (2) store those directions in a database; and (3) select and retrieve the customized directions for a requested destination.  [#59-1 at 20]  These capabilities all embody "routine data-gathering steps" and "conventional computer activities."  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 701 (2015).  The patent at issue in *Enfish*, by contrast, was "directed to a specific improvement to the way computers operate."  *Enfish*, LLC, 822 F.3d at 1336.  The "plain focus" of the claims at issue in *Enfish* was "on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity."  *Id.*  FWI has not identified any improvement to the functionality of the computer system itself, but rather utilizes conventional computer activities to improve the process of providing customized directions.  The alleged improvement relates to the type of information the computer stores and retrieves—*e.g.*, customized segment directions entered by a human system

---

are capable of performing are patent eligible if properly claimed."  In validating the patent at issue there, however, the court emphasized that the computer was utilized "to perform a distinct process to automate a task previously performed by humans" and that there was "no evidence that the process previously used by animators is the same as the process required by the claims."  *Id.* at 1314.  To the contrary, the patent in *McRo* incorporated "specific features" of rules that were utilized to animate facial expression, replacing the subjective process utilized by humans.  *Id.* at 1314-16.  The '402 Patent contains no similar innovation.  It does not replace the subjective element of the human process—the customization of directions—with an automated process, but rather continues to rely upon a human system manager to input the customized directions.

manager—not an improvement in "the way a computer stores and retrieves" that information.  *Id.* at 1339.

"[A] claim does not satisfy Section 101's eligible subject matter requirement by reciting generic computer implementation to 'optimize' an already-understood process." *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1174 (D. Colo. 2015), *aff'd*, No. 2016-1112, 2016 WL 5899749 (Fed. Cir. Oct. 11, 2016) (per curiam), *petition for cert. filed*, No. 16-1109 (U.S. Mar. 14, 2017).  In short, "[t]he patent does not describe a new device or improvement in any specific device that would convert the scope of its claims from abstract idea to patent-eligible innovation."  *Id.* at 1173.

The Court thus finds that the '402 Patent is directed to a patent-ineligible concept and proceeds to stage two of the analysis.

### 2.  Inventive Concept

"The 'inventive concept' step requires [the Court] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed."  *Affinity Labs of Texas, LLC*, 838 F.3d at 1258 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)).  The Court must determine "whether there are any 'additional features' in the claims that constitute an 'inventive concept,' thereby rendering the claims eligible for patenting even if they are directed to an abstract idea."  *Id.* at 1262 (quoting *Alice*, 134 S.Ct. at 2357).  Any such "additional features" must be "more than 'well-understood, routine, conventional activity.'"  *Id.* (quoting *Mayo*, 566 U.S. at 79-80).

FWI contends that the '402 Patent includes the "inventive concept" of allowing the computer to utilize "a table containing human-created custom instructional phrases that are associated with specific path segments on a map" rather than "generating directions from a set of generic preprogrammed instructions."   [#67 at 14]   In both instances, however, the computer is providing directions based upon "preprogrammed instructions."   It is only the content of those instructions, which in both instances is determined by the human programmer, that differs.   As discussed above, the use of customized directions by humans is "well-understood, routine, conventional activity."

"The introduction of a computer into the claims does not alter the analysis at *Mayo* step two."   *Alice*, 134 S. Ct. at 2357.   The '402 Patent fails to "claim any improvement in the technology required to implement its steps of [customized wayfaring instruction] data collection and transmission."   *Concaten, Inc.*, 131 F. Supp. 3d at 1176. Instead it merely relies upon a generic "processor and a database coupled to the processor."   [#59-1 at 20]   Nor does FWI identify any improvement or modification to the usual functionality of these components.   The '402 Patent thus differs from the patent at issue in *DDR Holdings, LLC v. Hotels.com*, L.P., 773 F.3d 1245 (Fed. Cir. 2014), relied upon by FWI.   Critical to the court's finding that the invention in *DDR Holdings* was patent-eligible was the determination that the program did not operate in the "normal, expected manner" but rather "over[ode] the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."   *Id.* at 1258.   Here, by contrast, the '402 Patent does not alter the "routine and conventional" use of the computer

technology it utilizes but rather relies upon an allegedly unique data source—the human-created customized directions.[12]

That FWI may be the first to apply this basic computer functionality to this specific data source—*i.e.*, customized directions—does not render it patent-eligible. *Concaten, Inc.*, 131 F. Supp. 3d at 1176 (finding that limitation to a specific application did not "alter[] the nature of the idea itself"). "[S]imply implementing [customized wayfinding] on a physical machine, namely a computer, [i]s not a patentable application of that principle." *Mayo*, 566 U.S. at 84; *see also Alice*, 134 S. Ct. at 2358 ("Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result.") Any improvement offered by the '402 Patent "stems merely from taking a known abstract idea and applying it in the context of [wayfinding directions] using generic, existing computer and networking technology." *Concaten, Inc.*, 131 F. Supp. 3d at 1177.

The Court thus finds that the '402 Patent fails to include an "inventive concept" and thus is patent inelligible. Accordingly, the Court respectfully RECOMMENDS that the Motion be GRANTED to the extend it seeks dismissal of the patent claims based upon patent ineligibility.[13]

---

[12] The other case relied upon by FWI, *Parus Holdings, Inc. v. Sallie Mae Bank*, 137 F. Supp. 3d 660 (D. Del. 2015), *aff'd*, No. 2016-1179, 2017 WL 744549 (Fed. Cir. Feb. 27, 2017)(per curiam), also emphasized that the claimed solution must "depart[] from the 'routine and conventional' use of the technology" utilized. *Id.* at 668. Moreover, the court went on to find that the invention was patent ineligible, in part, because the claim language did "not support plaintiff's characterization of the computer components as specialized." *Id.* at 674.

[13] Without citation to any authority, FWI suggests that the patent office's determination that Claim 1 of the '402 Patent addressed patent-eligible subject matter under *Alice* should be determinative of patent eligibility. [#67 at 11-12] The Court finds no support

### C.  Failure to State a Claim Arguments

#### 1.  Patent Claims

Because the Court finds that the '402 Patent is invalid, the Court need not reach 22 Miles' arguments regarding the purported insufficiency of the allegations of direct infringement, contributory infringement and induced infringement.

#### 2.  Copyright Claim

"There are two elements to a copyright infringement claim:  '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  22 Miles concedes that FWI has pled facts sufficient to satisfy the first element but contends that "FWI has not alleged facts showing that 22 Miles has copied protectable elements of FWI's copyrighted work."  [#60 at 19]

"A plaintiff can establish that the defendant copied his program either through the presentation of direct evidence, or through indirect evidence that shows (1) that the defendant had access to the copyrighted program, and (2) that there are probative similarities between the copyrighted material and the allegedly copied material."  *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993).  Here, FWI alleges that "upon information and belief, 22 Miles is in possession of and has access to Content Manager and Content Player" and "22 Miles Software is substantially similar to literal and non-literal original, protected elements of Content Manager and Content

---

for such a proposition.  To the contrary, the Federal Circuit has made clear that "[t]he issue of patent-eligibility under [Section] 101 is a question of law that [the court] review[s] without deference."  *Rapid Litig. Mgmt. Ltd.*, 827 F.3d at 1047.

Player."[14]  [#59 at ¶ 99]  In support of these allegations, FWI further alleges that (1) 22 Miles is a "relative newcomer" that only recently developed "a full suite of digital signage products"[15] [*id.* at ¶¶ 21, 23]; (2) 22 Miles' software "was intended to be a substitute for FWI software" [*id.* at ¶ 18]; (3) one of FWI's longtime partners informed FWI that 22 Miles' wayfinding software looks "remarkably similar" to the FWI platform with similar nuances in its user interface [*id.* at 25];  (4) one of FWI's customers thought he saw an FWI icon on a 22 Miles computer desktop during a presentation and thought 22 Miles had FWI software on the desktop [*id.* at ¶ 26]; and (5) the customer further informed FWI that it appeared to him that 22 Miles was developing its platform based upon the FWI software and that 22 Miles was able to quickly send the customer a patch any time he requested particular features of the FWI software [*id.* at 28].

22 Miles first contends that these allegations are insufficient because they do not sufficiently identify which protected work(s) 22 Miles is alleged to have accessed.  [#60

---

[14] To the extent 22 Miles contends that allegations made "upon information and belief," are insufficient to establish the plausibility of a claim, "numerous courts dealing with issues similar to [copyright infringement] have upheld plaintiffs' pleadings made 'on information and belief.'"  *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 11-CV-01687-PAB-CBS, 2013 WL 1229534, at *4 (D. Colo. Mar. 26, 2013)  (collecting cases).  As the Second Circuit has acknowledged, "[t]he Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation omitted).

[15] 22 Miles contends that this allegation is contradicted by the acknowledgement in the '402 Patent that 22 Miles already had a product in the market from 2007-2013 and thus "any similarity may be due to FWI's copying of 22 Miles' software."  [#60 at 22 n.5]  In the Amended Complaint, however, FWI alleges that 22 Miles had only a "rudimentary software product" until recently.  [#59 at ¶ 21]  Accepting this allegation as true and drawing all reasonable inferences in favor of FWI, the Court finds that the acknowledgement of this prior 22 Miles' product is not necessarily inconsistent with FWI's allegation that 22 Miles only recently and relatively suddenly brought "a full suite of digital signage products" to the market.  [*Id.*]

at 20]   Contrary to this representation, however, FWI has identified both the specific copyrights allegedly infringed and the specific FWI software products—Content Manager and Content Player—allegedly accessed and copied by 22 Miles.  [#59 at ¶¶ 12-15; 71-72; 99]  The allegations here thus are vastly different from those in the case relied upon by 22 Miles, *Flava Works, Inc. v. Clavio*, No. 11 C 05100, 2012 WL 2459146 (N.D. Ill. June 27, 2012).  In *Flava Works*, the plaintiff failed to "point to a specific copyrighted work that was infringed" and thus failed to provide enough information "to put [the defendant] on notice."  *Id.* at *2.  Here, by contrast, the allegations clearly are sufficient to put 22 Miles on notice of the specific copyrights and software products it is alleged to have infringed.

22 Miles next contends that "[t]here is simply no factual allegations in the complaint that 22 Miles accessed FWI's software."  [#60 at 21]  As an initial matter, the Complaint expressly alleges "upon information and belief, 22 Miles is in possession of and has access to Content Manager and Content Player."  [#59 at ¶ 99]  The Court finds the following factual allegations sufficient to plausibly allege that 22 Miles accessed FWI's software:  (1) an FWI partner believed 22 Miles to have a copy of the FWI Software and saw an FWI-related icon on a 22 Miles computer;[16] (2) 22 Miles was quickly able to provide an FWI customer with patches providing FWI features; and (3) there are substantial similarities between the function and interface of the 22 Miles and FWI products.

---

[16] In the Amended Complaint, FWI describes it as an "FWI Icon" [#59 at ¶ 26], whereas in an email from the partner at issue attached to FWI's motion to amend the initial complaint, it is described as "an icon that appeared to relate to FWI" [#47-4].  The Court finds this distinction immaterial to the plausibility of FWI's allegations that 22 Miles had access to FWI's software.

22 Miles next argues that FWI's copyright claim is deficient because FWI has not alleged with specificity what aspect(s) of 22 Miles' software are similar to the protected elements of FWI's copyrights.[17]  [#60 at 22]  The authorities cited by 22 Miles do not support such a demanding pleading standard.  In *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 136 (3d Cir. 2014), the Third Circuit upheld the dismissal of a copyright claim where the allegations "at most" alleged that "the two programs share[d] a common purpose or function."  Here, however, FWI has alleged that the two programs "look remarkably similar" and have the same nuances in their user interfaces and that 22 Miles was able to quickly add specific FWI software features.  Moreover, *Levey* expressly acknowledged that "[t]he determination of whether two programs are substantially similar is notoriously complex . . . requir[ing] a sophisticated enough understanding of both programs to divide them, conceptually, into their design or structural elements, to determine which of those elements are copyrightable, and to assess similarity with respect to only the protected elements, weighing the importance of any copied elements to the original software as a whole."  *Id.*  Such a complex analysis clearly is not possible at the pleadings stage of this case.

The court's decision in *Home Design Servs., Inc. v. J.F. Schoch Bldg. Corp.*, No. 2:11CV574, 2012 WL 442008 (E.D. Va. Feb. 10, 2012), is similarly inapposite.[18]  There,

---

[17] 22 Miles also argues that the Amended Complaint is deficient because "while FWI attached its copyright registrations as exhibits . . ., it did not attach any of the registered works."  [#60 at 23]  22 Miles cites no authority for such a requirement and the Court is not aware of any.

[18] *Tegg Corp. v. Beckstrom Elec. Co.*, No. 08-435, 2008 WL 2682602 (W.D. Pa. July 1, 2008) also is distinguishable.  There, the plaintiff failed to attach the copyright registrations to its complaint and further failed "to allege that it own[ed] the registered copyrights at issue and/or it [did] not allege that it met all of the requirements prior to

the plaintiff provided "no information whatsoever about the allegedly infringing works." *Id.* at *4.  Indeed, in response to the motion to dismiss, the plaintiff stated only that "Defendants know exactly what homes they have built, what the addresses are, who their customers were, and what they look like." *Id.* Here, however, FWI has identified the specific software of both 22 Miles and FWI that is at issue.[19]

Contrary to 22 Miles' contention, plaintiffs in copyright cases "need not allege the exact content that Defendants are suspected of copying" at the pleading stage, because "[t]here is no requirement that copyright claims [ ] be pled with particularity." *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-5780 JF(RS), 2009 WL 1299698, at *4 (N.D. Cal. May 11, 2009).[20]  Such a standard would be particularly unsuitable in software case as "it can be difficult or impossible for a plaintiff to examine accused source code before some discovery has occurred." *Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428-LHK, 2011 WL 1044899, at *8 (N.D. Cal. Mar. 23, 2011).  Nor are plaintiffs required to identify specifically what elements of the copyrighted work are protected at

---

filing its applications with the Copyright Office for such registrations." *Id.* at *8.  As such, the court found the copyright claim deficient because of "the confused nature of the allegations regarding what software or components of the software are protected by registered copyrights." *Id.*  Given that FWI has provided the relevant registrations and identified the specific software to which they apply, there is no such confusion here.

[19] The *Home Design Services* court further emphasized that "architectural works are indeed entitled only to 'thin' copyright protection and, as such, require a showing of 'supersubstantial similarity' before an infringement claim will be sustained." *Id.* at *3. No such heightened standard is applicable here.

[20] 22 Miles argues that *Facebook* is inapplicable because the court's holding was predicated upon an allegation that "the defendant directly copied entire webpages," whereas there purportedly "is no factual allegation of direct copying" here.  [#74 at 18 n.4]  As an initial matter, FWI does allege direct copying of its software code by 22 Miles.  22 Miles appears to confuse the concept of direct copying with the type of evidence offered to support the allegation of direct copying.  Regardless, the *Facebook* court's analysis of the sufficiency of the identification of the material allegedly copied was unrelated to the allegation of direct copying.

the pleadings stage.  *See Kingsbury Int'l, Ltd. v. Trade The News, Inc.*, No. 08 C 3110, 2008 WL 4853615, at *2 (N.D. Ill. Oct. 28, 2008) (rejecting argument that complaint failed to specify infringed material sufficient to determine whether elements allegedly infringed were protected or unprotected by the copyrights).[21]  22 Miles "will have ample opportunity to gain more detailed information about [FWI's] claims during discovery."  *Id.*

Accordingly, the Court respectfully RECOMMENDS that 22 Miles' Motion be DENIED to the extent it seeks dismissal of FWI's copyright claim.

### 3.  False Patent Marking

At the Motion Hearing, counsel for FWI acknowledged that the patent markings at issue in the Amended Complaint had all "been removed."  [#81 at 78:18-21]  As a result, FWI informed the Court that it was "not going to pursue" its false patent marking claim and thus that it should be "dismissed."  [*Id.* at 79:8-13]

Accordingly, the Court respectfully RECOMMENDS that 22 Miles' Motion be GRANTED to the extent it seeks dismissal of FWI's claim for false patent marking.

### D.  Preemption of State Law Claims

22 Miles argues that FWI's state law unjust enrichment and unfair competition claims are preempted by federal copyright law.  [#60 at 26-29]  The Tenth Circuit has recognized that state law claims are preempted by the Copyright Act to the extent that they "assert rights that are equivalent to rights under the Copyright Act."  *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1148 (10th Cir. 2009).

---

[21] 22 Miles' attempt to distinguish *Kingsbury* is unpersuasive.  [#74 at 19 n.5]  The court's decision was not based upon the type of content protected by the copyright; thus, that the plaintiff's copyright in that case applied to a "business index" rather than software is immaterial.

In response, FWI does not dispute either (1) that state law claims are preempted by the Copyright Act; or (2) that its unjust enrichment and unfair competition claims assert rights equivalent to those asserted in its copyright claim.  [#67 at 29-30]  Instead, FWI argues that its state law claims are pled "in the alternative" to the copyright claim, because "[i]t is clear that 22 Miles contests and will contest FWI's copyright infringement claim on multiple grounds."  [*Id.* at 29]

FWI relies upon a single decision to support its contention.  [#67 at 29 (citing *Raptor Educ. Found. v. Rocky Mountain Raptor Program ("Raptor")*, No. 10-cv-01222-WDM-MJW, 2010 WL 4537119, at *3 (D. Colo. Nov. 3, 2010))][22]  As FWI seemed to acknowledge at the Motion Hearing [#81 at 79:18-80:8], however, the weight of authority has found that state law claims asserting rights equivalent to those under the Copyright Act are preempted even where, as here, the defendant disputes the validity of the copyright claim.  *See, e.g.*, *Builder MT LLC v. Zybertech Constr. Software Servs., Ltd.*, No. 08-cv-00435-LTB, 2008 WL 4724146, at *4-5 (D. Colo. Oct. 24, 2008) (finding unjust enrichment claim preempted even if plaintiff never registered its software under the Copyright Act); *MDM Group Assocs., Inc. v. ResortQuest Int'l, Inc.*, No. 06-cv-01518-PSF-KLM, 2007 WL 2909408, at *3, 9 (D. Colo. Oct. 1, 2007) (finding unjust enrichment claim preempted where defendant argued that work was not subject to

---

[22] In *Raptor*, the plaintiff argues that "the copyright [was] not implicated" to the extent the state law claims were based upon a similar voucher and not the actual copyrighted work.  *Id.*  Thus, the Court's statement that "at a minimum, Plaintiff may plead [the state law] claims in the alternative" may relate to the plaintiff in that case's alternative theory of violation of the state laws based upon the use of a similar voucher that did not violate the copyright.  *Id.*  Indeed, the Court further explicitly stated that it was not reaching "the issue of whether [the state law claims] are preempted."  *Id.*  FWI makes no such argument.

copyright protection); *see also Moser Pilon Nelson Architects, LLC v. HNTB Corp.*, No. 05 CV 422(MRK), 2006 WL 2331013, at *11 (D. Conn. Aug. 8, 2006) (rejecting attempt to plead state law claims "in the alternative" to copyright claim); *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *7 (N.D. Cal. Oct. 24, 2013) (holding that "preempted claims are not saved from preemption just because they are pled in the alternative").

This Court agrees with the weight of the authority that state law claims that assert rights that are equivalent to rights under the Copyright Act are preempted, even where the defendant refutes the validity of the copyright claim. Accordingly, the Court respectfully RECOMMENDS that 22 Miles' Motion be GRANTED to the extent it seeks dismissal of FWI's unjust enrichment and unfair competition claims.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's Motion to Dismiss [#60] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1)    **DENIED** to the extent it seeks dismissal of FWI's claims for lack of personal jurisdiction;

(2)    **GRANTED** to the extent it seeks dismissal of FWI's patent claims;

(3)    **DENIED** to the extent it seeks dismissal of FWI's copyright claims;

(4)    **GRANTED** to the extent it seeks dismissal of FWI's false patent marking claim; and

(5)   **GRANTED** to the extent it seeks dismissal of FWI's unjust enrichment and unfair competition claims.[23]

DATED:  March 28, 2017                    BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge

---

[23] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review."  *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (concluding that district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).