1                  IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO
2         Case Number:   16-cv-00704-MSK-STV

3         _____

4         FOUR WINDS INTERACTIVE, LLC,

5                    Plaintiff,

6         v.

7         22 MILES, INC.,

8                    Defendant.

9         _____

10                       Proceedings before SCOTT T. VARHOLAK,

11        United States Magistrate Judge, United States

12        District Court for the District of Colorado,

13        commencing at 2:08 p.m., March 22, 2017, in the

14        United States Courthouse, Denver, Colorado.

15        _____

16                       WHEREUPON, THE ELECTRONICALLY RECORDED
17
          PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...
18

19        _____

                               APPEARANCES
20
             JOHN POSTHUMUS, ESQ., PATRICIA YIH-TING HO, ESQ.
21               Appearing on behalf of the Plaintiff.

22           RYAN KOPPELMAN, ESQ., TIMOTHY R. WATSON, ESQ.
                 Appearing on behalf of the Defendant.
23        _____

24                            DISCOVERY HEARING

25

```
 1                P R O C E E D I N G S
 2                (Within, the electronically recorded
 3     proceedings are herein transcribed pursuant to order
 4     of counsel.  Due to incomplete speaker identification
 5     in the FTR log notes, speaker identification in this
 6     transcript in some cases may be inaccurate.)
 7                THE COURTROOM DEPUTY:  All rise.  Court
 8     is in session.
 9                THE COURT:  Please be seated.  This is
10     16-cv-704.  Can I have entries of appearance, please?
11                MR. POSTHUMUS:  Good afternoon, Your
12     Honor.  John Posthumus of the law firm of Sheridan
13     Ross.  I'm here with my colleague Patty Ho.  In the
14     gallery here is the associate counsel for my client,
15     Daniel Barker.  And I also have here the CEO of Four
16     Winds Interactive, David Levin.
17                THE COURT:  Good afternoon.
18                MR. KOPPELMAN:  Good afternoon, Your
19     Honor.  Ryan Koppelman with Alston & Bird on behalf
20     of the defendant, and with me is Tim Watson, also,
21     with my firm.
22                THE COURT:  Good afternoon.  So I've
23     received the joint statement that has been submitted
24     to us regarding the dispute.
25                Before we begin there.  I can let the
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                     March 22, 2017

Page 3

```
 1   parties know that I anticipate getting a
 2   recommendation out on the motion to dismiss
 3   potentially as early as this week, certainly by early
 4   as next week.  So you should have all -- have that
 5   soon.  Ultimately, it's a recommendation, though, and
 6   Chief Judge Krieger will make the ultimate
 7   determination.  So I don't think it impacts any of
 8   the discovery disputes because it's not going to
 9   change anything other than be my recommendation to
10   Chief Judge Krieger.
11              So let's turn to the discovery
12   disputes.  What I have is, I have the defendant's
13   statements regarding discovery that they think that
14   the plaintiff has not responded to.  And then I have
15   plaintiff's statement regarding, in particular,
16   the -- the issue with respect to the source code.  I
17   don't have -- at least I don't see -- plaintiff's
18   response to the defendant's portion of the discovery
19   dispute, or at least what defendant claims it needs
20   or has not been provided in plaintiff's response to
21   that, unless I'm -- unless I'm missing something
22   here.
23              MR. POSTHUMUS:  Your Honor, you're
24   referring to, kind of, our position with regard to
25   what we haven't provided --
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                     March 22, 2017

Page 4

```
 1                    THE COURT:  Right.  That's exactly --
 2                    MR. POSTHUMUS:  -- in response to
 3    there --
 4                    THE COURT:  Right.  Right.  That's
 5    exactly right.
 6                    MR. POSTHUMUS:  Okay.  It's not part of
 7    this document.  We haven't submitted that to the
 8    court.  We've obviously been meeting and
 9    conferring --
10                    THE COURT:  Okay.
11                    MR. POSTHUMUS:  -- on those issues
12    and --
13                    THE COURT:  Okay.
14                    MR. POSTHUMUS:  -- I'm prepared to talk
15    about those, yes.
16                    THE COURT:  Okay.  Well, then why don't
17    we begin -- we'll just go in order.  Why don't we
18    begin with the defendant's portion of this, or at
19    least what they're claiming has not been produced.
20    And the first thing is the failure to produce
21    documents in response to the first set of requests
22    for production.  So why don't I hear each side's
23    position on that.  Go ahead.
24                    MR. KOPPELMAN:  Thank you, Your Honor.
25    With respect to defendant's RFPs, this is, I think,
```

```
 1    one of the simpler issues for today.  Those requests
 2    were submitted about eight months ago and no
 3    documents have been produced.  We haven't heard a
 4    reasonable excuse for delay, and at this point
 5    it's -- you know, discovery closes in almost a month
 6    and it's prejudicial.  And we need an order, I think
 7    at a minimum, setting a date certain when that
 8    production has to happen.
 9                  We've received estimates at various
10    times.  They thought they were going to do a
11    production and we still don't have one.  And the
12    current estimate, at least as I understand it, is
13    supposed to be at the end of this month.
14                  THE COURT:  And which documents, in
15    particular, are being sought here?  It may be a broad
16    range of documents, but I -- I mean, I'm just trying
17    to get a sense of why it's taking eight months to get
18    -- to get these turned over.
19                  MR. KOPPELMAN:  I don't have an answer
20    to that.
21                  THE COURT:  Okay.
22                  MR. KOPPELMAN:  At least my
23    understanding of the current dispute is they're no
24    longer standing on the objections.  They said they'd
25    produced everything responsive.  They said they'd do
```

Case 1:16-cv-00704-MSK-STV   Document 95   Filed 04/06/17   USDC Colorado   Page 6 of 74

**Four Winds Interactive, LLC vs.**
**22 Miles, Inc.**

**Discovery Hearing**
**March 22, 2017**

Page 6

```
 1   a privilege and a relevancy screen.  We don't know

 2   what to do about a relevancy screen, in general,

 3   about what would actually be screened out, but that's

 4   what we've heard --

 5                  THE COURT:  Okay.

 6                  MR. KOPPELMAN:  -- from plaintiff.  So

 7   that's --

 8                  THE COURT:  Okay.  Let me ask

 9   plaintiff, why haven't these been turned over to this

10   point?

11                  MR. POSTHUMUS:  Well, Your Honor, I

12   think there's probably several reasons.  First, let

13   me give you, kind of, the current status of where

14   we're at.

15                  THE COURT:  Okay.

16                  MR. POSTHUMUS:  And then I can kind of

17   maybe explain how we've gotten to this point.

18                  So we're undertaking a review right

19   now.  It's been electronically, you know, transported

20   with our ESI service provider.  We're reviewing the

21   documents both for privilege and for relevancy.

22   We're going through --

23                  THE COURT:  How many documents are we

24   talking about, roughly?

25                  MR. POSTHUMUS:  The total grouping that
```

**303-988-8470  www.SKReporting.com**

Page 6

Four Winds Interactive, LLC vs.                                          Discovery Hearing
22 Miles, Inc.                                                          March 22, 2017

 1   we're going through right now is about 7,000

 2   documents.

 3                  THE COURT:  Okay.

 4                  MR. POSTHUMUS:  And so we are -- we

 5   anticipate that we will complete that review and make

 6   that production available by March 31st.  We expect

 7   to make a production, actually, this afternoon of

 8   things that we've already completed.  We expect to

 9   have this complete -- production completed by

10   March 31st.

11                  THE COURT:  Why did it take so long?  I

12   mean, 7,000 documents does not sound like an

13   inordinate amount to do a privilege review.  I mean,

14   it's not nothing, and if we had been at, you know,

15   the two-month point I -- I might sit there and say,

16   Okay, well, you know, it's 7,000 -- but eight months

17   to review 7,000 documents seems like an

18   inordinately --

19                  MR. POSTHUMUS:  Right.

20                  THE COURT:  -- long period of time.

21                  MR. POSTHUMUS:  Well, Your Honor, I

22   think, in part, it's -- the delay there has been, in

23   large part, to our frustration with regard to

24   defendant engaging us in discovery and kind of a --

25                  THE COURT:  But that's not -- that's

Four Winds Interactive, LLC vs.
22 Miles, Inc.

Discovery Hearing
March 22, 2017

Page 8

1    not an answer.  I mean, to the extent they violate

2    the discovery rules -- and I'm not saying they have.

3    We'll turn to them in a moment, but if they violated

4    the discovery rules that doesn't give you permission

5    to violate the discovery rules.  I mean, that means

6    you come to me and say, Hey, they violated the

7    discovery rules, and here's the sanction.  It's not,

8    in response, neither side complies with discovery

9    obligations.

10              MR. POSTHUMUS:  Right.  Right.  I'm

11   just telling you, you know, kind of the atmospherics

12   of being around all of this, right.  And there have

13   been -- you know, obviously, we transitioned as

14   counsel.  There have been meet-and-confers with

15   regard to the production.  There has been a motion to

16   stay that was granted -- or filed during the -- kind

17   of the middle part of this discovery -- these

18   discovery issues and, you know, we're -- we're

19   producing it now.  And -- but we've been very

20   frustrated with regard to seeking a source code

21   review and very frustrated with regard to scheduling

22   a 30(b)(6) deposition.

23              We've been wanting to, you know, try

24   to, you know, use this as motivation to get them to

25   come over and get those things scheduled and get

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                     March 22, 2017

```
 1   those things done as well.
 2               THE COURT:  And none of those are an
 3   answer.  I mean, that's -- honestly, that sounds like
 4   gamesmanship.  Again, I'll turn to what their
 5   obligations are in a moment, but, essentially, what
 6   you're saying is they're playing games with us so
 7   we're going to play games with them.  And that's --
 8   that's not how federal court works.
 9               MR. POSTHUMUS:  Right.
10               THE COURT:  So let me ask plaintiffs.
11   If I order it by March 31st, I mean, that's nine days
12   from now, does that -- I know you wanted it earlier
13   but if I order it by March 31st, does that give you
14   sufficient time to review it?  And then if you need
15   to amend the scheduling order based upon what you
16   receive, you can move to amend, and I likely would
17   find good cause given the delay in it.
18               MR. KOPPELMAN:  Under the
19   circumstances, I'm not sure we're in a position to
20   ask for much more than March 31st.
21               THE COURT:  That's fair.
22               MR. KOPPELMAN:  We did meet and confer
23   on this back in October, early November.  There were
24   search terms we provided.  We followed the ESI stip.
25   We included search terms, custodians.  We talked
```

```
 1    about those search terms way back then.  And at the
 2    time, plaintiff said that they were going to do some
 3    test searches and see.  They couldn't really -- they
 4    didn't like our search terms, but they thought, you
 5    know -- you know, maybe they're not that bad.  And
 6    then nothing happened from November until now.  And,
 7    you know, from my perspective we're going to do the
 8    best we can with what we get and we may need, based
 9    on this delay, some additional time --
10                   THE COURT:  That's --
11                   MR. KOPPELMAN:  -- but it's -- it
12    doesn't seem like there's an excuse.  And under
13    Rule 37, when there's not a substantial
14    justification, some sanction is appropriate.  And I
15    don't have a proposed sanction now.  I don't know if
16    the court is willing to entertain that at this point,
17    but I haven't heard a reason why there's been this
18    delay.
19                   THE COURT:  No, I haven't heard a great
20    one either.  What I'm going to do at this point is
21    I'm going to order the plaintiff to produce the
22    documents by March 31st.  Based on that production,
23    if, at that point, the defendants need additional
24    time or need to amend the scheduling order or -- I
25    mean, we can't say what's going to happen based on
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                     March 22, 2017

Page 11

 1    stuff we don't know is out there, but follow my
 2    discovery procedures.  If you seek to amend the
 3    scheduling order, you can file a motion.  It will get
 4    referred to me and I likely will grant it given that
 5    you're receiving this a month before the discovery
 6    cutoff.
 7                    MR. KOPPELMAN:  I appreciate that, Your
 8    Honor.  The thing that goes hand in hand with this is
 9    a privilege log.  Typically, you would give a little
10    extra time, but there's already been eight months.  I
11    mean, and with only a month left, I think we need the
12    privilege log with the production.
13                    THE COURT:  I agree.  I'm going to
14    order the -- I'm going to order the privilege log by
15    that --
16                    MR. KOPPELMAN:  Okay.
17                    THE COURT:  -- deadline too.
18                    MR. KOPPELMAN:  Okay.
19                    THE COURT:  So let's turn -- let's
20    turn, then, to the second one, which is the
21    interrogatory response.  And I -- I don't know what
22    the easiest way to go through this is.  Maybe it's
23    interrogatory by interrogatory.  That's probably the
24    easiest way to go through it, so let's -- let's begin
25    with Interrogatories 1 and 2.

Four Winds Interactive, LLC vs.
22 Miles, Inc.

Discovery Hearing
March 22, 2017

Page 12

```
 1                   MR. KOPPELMAN:  Sure.  Your Honor.
 2   We've sort of grouped those together in the joint
 3   statement and that's how I'd propose to address them
 4   now.
 5                   So plaintiff has either evaded a direct
 6   response to these or just refused to answer
 7   substantial portions of it.  These rogs seek
 8   information about what portions plaintiff's works are
 9   copyrightable, what defendants are alleged to have
10   copied, and, you know, what substantial similarities
11   exist between plaintiff's and defendant's works.
12                   On page 25 of plaintiff's opposition to
13   their motion to dismiss -- we had cited this --
14   plaintiff stated, quote, Notwithstanding, FWI's
15   knowledge deficit at this stage, FWI has specified
16   that 22 Miles is accused of copying multiple
17   protectable aspects of FWI software, including;
18   modules, algorithms, data structures, source code,
19   object code, program structure, architecture, user
20   interface.
21                   On the previous page there's a
22   statement that relates to this where plaintiff's
23   stated, and I quote, 22 Miles will have every
24   opportunity to vet the merits of these allegations
25   through discovery.  The amended complaint more than
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                      March 22, 2017

Page 13

 1    sufficiently alleges that 22 Miles copied protectable
 2    elements of FWI's copyrighted works.
 3              THE COURT:  But doesn't this, now, get
 4    into the issue of source code?  Where -- what we
 5    discussed, my recollection is, at the last hearing
 6    was the difficulty that plaintiff has in pointing to
 7    a specific algorithm, program structure, object code,
 8    data structure, module, without seeing the source
 9    code first.  And that what they are alleging through
10    the complaint is that the output -- what they're
11    seeing as an output suggests that the source code has
12    been copied, but without going into the source code
13    itself they can't point to the specific source code
14    that has been copied.
15              So it seems like what you're asking
16    them to do in their response to the interrogatories
17    is to identify the particular source code, but
18    they're alleging -- and this all gets wrapped up
19    together -- that you're not permitting them to see
20    the source code and -- so, therefore, I'm not sure
21    how they can respond to this without first seeing the
22    source code to say this is the particular thing that
23    is being infringed on.
24              MR. KOPPELMAN:  I hear you, Your Honor.
25    I'm not sure how they make these specific allegations

Page 14

```
 1   without facts to back them up.  And they oppose a
 2   motion to dismiss based on these very specific
 3   allegations with no facts.
 4             THE COURT:  Well, I'm not sure about
 5   that.
 6             MR. KOPPELMAN:  How is that possible?
 7             THE COURT:  Well, here -- I mean,
 8   here's how it's possible, is -- and my technological
 9   illiteracy is probably going to come out in my
10   response to this question.  But if, for example --
11   I'm trying to take a simpler technology than this,
12   but if, for example, the allegation was -- take a
13   video game.  Okay.  My son plays Xbox.  And you had
14   one Madden football game that plays -- it does
15   everything that it does.  And then you had a second
16   football game that was ident -- the product, that
17   what you were seeing on the screen was identical and
18   what was being done was identical, you may not know
19   the source code, but you can allege that the actions
20   of it, that what you are seeing on the screen is
21   identical to the first one and, therefore, have a
22   valid basis at a -- at a motion to dismiss stage or
23   to allege -- to survive a Rule 11 that -- that it is
24   copyrighted; that something has been taken and
25   stolen.
```

Four Winds Interactive, LLC vs.                                Discovery Hearing
22 Miles, Inc.                                                   March 22, 2017

Page 15

 1                  That's, in essence, what they're
 2    alleging with the copyright component of this, is
 3    that what they can see is a product that does the
 4    same exact thing as their product does, and based
 5    upon the additional allegations in there that someone
 6    claimed that they had seen their software on one of
 7    your computer screens, that that was enough, at least
 8    at a Rule 11 or Rule 12(b)(6) stage, to allege
 9    sufficient of the copyright infringement.
10                  Now what they're saying is, but we need
11    to get into the source code to say whether or not it
12    is, indeed, stolen or whether you found a new way to
13    do virtually the same thing but through a different
14    source code.
15                  MR. KOPPELMAN:  If -- I think you're
16    being rather charitable to their allegations.  If, in
17    fact, our software was so identical, then they should
18    have no problem identifying those similarities.  And
19    we don't have it.  And, furthermore, it's -- what
20    they cite in their complaint is 22 Miles, the
21    defendant software that predates their copyrights.
22    And there's case law we cited in the joint statement
23    that when it predates, you can't just assume it
24    infringes.  The similarity doesn't then trump, right.
25                  Yeah, you could say this Madden game

1    looks like this other football game, but if you find

2    out that the other football game came before it, you

3    can't allege copyright infringement.

4                    THE COURT:  Well, but that --

5                    MR. KOPPELMAN:  You're going to have to

6    be very specific as to what was stolen, what came

7    later, such that it could have been copied.  And --

8                    THE COURT:  But how are they going to

9    know that if they can't get into the source code?

10                   MR. KOPPELMAN:  I don't think they

11   can -- this is why I don't think they can -- they

12   have a Rule 11 basis to bring these claims.  If they

13   can't know it, then they're just merely guessing and

14   suggesting when the facts don't bear it out.  That's

15   -- that's the problem.

16                   THE COURT:  Let me hear from plaintiff

17   on this.

18                   MR. POSTHUMUS:  Your Honor, I think

19   you've identified the correct issue, and the reason

20   we haven't been able to respond is because we haven't

21   seen the source code yet.  We have given them an

22   amended response that I think identifies a number of

23   aspects of similarity with regard to the user

24   interface, and we have presented that to them.

25                   I would also point out, and this is a

Page 17

```
 1   case from the Tenth Circuit.  It's the Gates Rubber
 2   case.
 3                 THE COURT:  Do you have the citation to
 4   it?
 5                 MR. POSTHUMUS:  Yes.  It's a 9 F.3rd
 6   823, and then it's at star 11 -- double star 11 it
 7   starts.  But there's a -- this particular case talks
 8   about, generally speaking, that it's essential to
 9   kind of -- in cases of copyright infringement, to
10   gather, kind of, all the facts before you start
11   assessing what's copyrightable subject matter, what's
12   substantially similar, all of these things.
13                 And this is a direct quote from the
14   case, We agree with the district court's conclusion
15   that it is far preferable, especially in the area of
16   legal and technological sophistication as complex as
17   this area of copyright protection, to draw upon a
18   larger arsenal of facts in order to design or derive
19   the appropriate, legally significant facts.  Once
20   these are gathered and expert testimony is heard --
21                 THE COURT:  Where are you?
22                 MR. POSTHUMUS:  -- the court can
23   analyze --
24                 THE COURT:  I'm sorry.  What headnote
25   are you at?
```

Four Winds Interactive, LLC vs.
22 Miles, Inc.

Discovery Hearing
March 22, 2017

Page 18

```
 1                MR. POSTHUMUS:  I'm sorry.

 2                THE COURT:  Or -- or page number?

 3                MR. POSTHUMUS:  1508.  I'm sorry.  I

 4   see the double star -- or triple star here at 1508.

 5   Does that help?

 6                THE COURT:  Give me the cite again.  I

 7   thought you said 9 F.3rd, 823.

 8                MR. POSTHUMUS:  9 F.3rd, the 823.

 9                THE COURT:  Okay.  And then the page

10   number can't be 1528.  That would get us -- that

11   would be a 700-page opinion.

12                MR. POSTHUMUS:  That must be the Lexis.

13   Let me see here.  Let me see what the page number is.

14                MS. HO:  I think it's 831.

15                MR. POSTHUMUS:  It's right after

16   footnote 7, if that helps.

17                THE COURT:  Yeah.  That will help.

18   Okay.  Okay.  Go ahead.

19                MR. POSTHUMUS:  Okay.  The court in

20   that -- it says -- do you see where I'm reading:  We

21   agree with the district court's conclusion that it's

22   far preferable, especially in the area of legal and

23   technological sophistication as complex as this area

24   of copyright protection, to draw upon a larger

25   arsenal of facts in order to design or derive the
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                      March 22, 2017

Page 19

 1    appropriate, legally significant facts.  Once these
 2    are gathered and expert testimony is heard, the court
 3    can then analyze which portions of the program,
 4    according to expert testimony, infringes the
 5    protected expression.
 6                  And so I think ultimately what they're
 7    getting at here is, it's like you need to do the
 8    comparison.  You need to get into it.  There's even a
 9    reference here talking about unprotectable elements,
10    and why that's important that you look at that.
11    Because, certainly, that may be indicative -- maybe
12    have probative value as to whether or not copying
13    occurred.
14                  And so all of that needs to occur, but
15    that can't occur because we haven't seen the source
16    code.  And that's ultimately -- and in order to fully
17    respond to Interrogatories 1 and 2, we need to see
18    the source code.
19                  THE COURT:  Go ahead.
20                  MR. KOPPELMAN:  Your Honor, at least
21    with respect to FWI source code they should be able
22    to tell us what's protectable and what's not
23    protectable in it.  What portions they actually
24    originated; what portions came from a source -- a
25    source code library they pulled or open source or

 1    that was, you know, some other source.  What's

 2    protectable?  What are they claiming protection over

 3    in their own code?  They don't need to see our code

 4    to tell us what's protectable in their own code, and

 5    they haven't given us that and they won't.

 6                    And, then, furthermore, the UI.  They

 7    don't need to see our source code to figure out what

 8    2D aspects of the user interface are supposedly

 9    copied.

10                    And the current supplement that we just

11    got last week, finally, after seven and a half months

12    of waning, does do some comparison to UI, but it

13    doesn't link it -- it doesn't say what's actually

14    protectable and what's linked to -- they have five

15    different copyright registrations.  What is -- what

16    are -- which copyright registrations are they

17    actually referring to?  And it's hard to even follow

18    what they're talking about.

19                    So what they've given us is deficient.

20    It's not intelligible and, you know, they should at

21    least be able to tell us what's copyrightable in

22    their own code.

23                    THE COURT:  But wouldn't it be much

24    cleaner -- and we discussed this at the last hearing,

25    back in January, I believe it was, maybe even earlier

Four Winds Interactive, LLC vs.                    Discovery Hearing
22 Miles, Inc.                                        March 22, 2017

Page 21

 1   than that.  I think it was earlier than that, we

 2   discussed the issue of source code.  And my

 3   recollection of the hearing, and it's probably not as

 4   good as either side's recollection of the hearing

 5   because I have so many of these, but my recollection

 6   was that at that hearing it was discussed that

 7   source -- that if the stay was not granted, which it

 8   wasn't, that the source code was going to be

 9   reviewed.

10            It seems to me that it would be much

11   more efficient if they review the source code,

12   compare it to FWI source code, and then can sit there

13   and say whether or not anything is infringed or not

14   infringed.  And it seems like that may answer the

15   lawsuit as a whole.  If it's not infringing in any

16   way, wouldn't that end the lawsuit?  And so I don't

17   understand -- and I know we're jumping now to their

18   allegations with respect to the source code, but it

19   doesn't seem to me that the objections here are all

20   that well-founded.

21            I mean, the first one is -- well, we

22   agreed to an ESI procedure, but I agree with the

23   plaintiff that the purpose of ESI is to limit -- is

24   to try to find a way to limit large volumes of

25   discovery that are electronically stored such as

Page 22

1   emails.  When there's 10,000 emails, we find some way
2   to -- to limit that.
3                  If they asked, I mean, months ago
4   for -- for the source code, and if the objection is
5   only, Well, why didn't you go through the ESI
6   procedure, that doesn't seem to me like -- that seems
7   to me like something that could be worked out between
8   the parties and not take eight months and require
9   judicial intervention on that.
10                 If the objection is relevance, again,
11  it seems directly relevant because it seems that this
12  will answer both the patent and the copyright portion
13  of this case which are the two big portions of the
14  case.
15                 Now, again, there may be other defenses
16  beyond that, such as whether this is a patent
17  eligible product, but even so, it seems like that
18  would -- if it's not infringing in any way, if the
19  source code is completely different, that ends this
20  lawsuit.  And so I don't know why we're eight months
21  down the road just getting to this question.  Go
22  ahead.
23                 MR. KOPPELMAN:  Well, Your Honor,
24  there's a few issues you've raised.  They've -- I
25  guess the defendant's perspective is they've never

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                    March 22, 2017

Page 23

1    properly asked for it.  When we met and conferred on

2    the ESI stip, they represented that those RFPs were

3    only for paper.  And that was included in our

4    objections and responses back in July that we

5    understood it was only seeking paper, didn't comply

6    with ESI, and we weren't producing source code.

7                   THE COURT:  Well, Request for

8    Production Number 1 requests, quote -- I'm assuming

9    this is quoted correctly in the joint statement --

10   Source code for all software identified in 22 Mile's

11   response to plaintiff's interrogatories Numbers 1 and

12   2.

13                  I'm assuming that's the source code for

14   the product here.  And how else would it possibly --

15   how could it be done in paper?  I mean, it's an

16   electronic document.  How -- I can't -- I can't

17   fathom that it would be on paper.

18                  MR. KOPPELMAN:  Well, they issued that

19   RFP before we entered the ESI stip.  So what they

20   should have done to perfect the request, is after the

21   ESI stip when they said that, Yeah, those only --

22   those requests aren't compliant with the stip we just

23   entered, that's only paper issuing a request.  Which

24   they never did.  They're not diligent.  And they

25   waited until after the deadline to finally issue an

Page 24

```
 1   ESI request.  They don't have a proper request
 2   outstanding.
 3               THE COURT:  Is the ESI --
 4               MR. KOPPELMAN:  That is not the -- that
 5   is not the defendant's fault that they never properly
 6   requested it.  The ESI stipulation governs all
 7   electronic discovery.  And our objections and
 8   responses memorialized the representation they made
 9   to us that it was only seeking paper.  And now they
10   want to go back on it because they weren't diligent,
11   and they want to blame us for the fact that they
12   weren't diligent.
13               THE COURT:  So the request for
14   production was sent --
15               MR. KOPPELMAN:  In May.
16               THE COURT:  -- before the ESI stip.
17               MR. KOPPELMAN:  Correct.
18               THE COURT:  What were the discussions
19   regarding following this ESI stip which, in
20   paragraph 2, states:  The parties are aware of the
21   importance the court places on cooperation and commit
22   to cooperating in good faith throughout the matter
23   consistent with the court's guidelines for the
24   discovery of ESI?
25               What discussions have occurred between
```

Page 25

 1   June, when this was entered, and today regarding

 2   source code and whether source code would be turned

 3   over?

 4              MR. KOPPELMAN:  On July 28th, the day

 5   the ESI stip was entered we had a meet and confer and

 6   it was represented that is only paper.  We served our

 7   objections and it memorialized that.  In --

 8              THE COURT:  And in those objections,

 9   what was said about source code?  Specifically, in

10   the objection to Request for Production Number 1,

11   what was stated?

12              MR. KOPPELMAN:  I'll quote it for you.

13              THE COURT:  Okay.  Yep.

14              MR. KOPPELMAN:  This is on page 5 of

15   defendant's objections and responses to the first set

16   of RFPs.  This is a specific objection laid out

17   specifically to Request for Production Number 1:

18   22 Miles objects to the extent FWI is seeking

19   electronically stored information without serving

20   proper requests under the stipulated order regarding

21   discovery.  Electronically stored information, DI46.

22              During meet and confer on the scope of

23   that order, counsel for FWI indicated that it would

24   apply to its pending request, such that they only

25   sought paper documents.  22 Miles has, accordingly,

Page 26

 1   not searched ESI in response to this request.
 2              THE COURT:  And then what was the --
 3   what was the response?  What were the further
 4   discussions after that was -- after that objection
 5   was filed?
 6              MR. KOPPELMAN:  We had a
 7   meet-and-confer in October with opposing counsel.
 8   They raised concerns about our interrogatory
 9   responses.  We fixed those interrogatory responses.
10   They said that we had objections based on those
11   interrogatory responses and we needed to amend this
12   response to RFPs, which we did.
13              On November 11th, 2016, we served an
14   amended and supplemental response.  And,
15   specifically, with respect to Request for Production
16   Number 1 we stated on August 29th, 22 Miles amended
17   its responses to Plaintiff's Interrogatory Number 1
18   and 2.  In light of these amendments, 22 Miles
19   responds as follows:  Subject to and without waiving
20   the foregoing objections, 22 Miles has not identified
21   any non-ESI responsive to this request.
22              After this, we never heard anything
23   about this response.  We got a letter in December
24   asking for source code under the local patent rules,
25   and under the local patent rules only.  We had the

Four Winds Interactive, LLC vs.                               Discovery Hearing
22 Miles, Inc.                                                  March 22, 2017

Page 27

 1   hearing on the motion to stay.  We got a follow-up
 2   letter in early February, and we had a
 3   meet-and-confer on February 16th, and I asked counsel
 4   specifically, you know, You guys identified local
 5   patent rules.  Are you also seeking source code under
 6   the RFP, because there's an ESI order and we objected
 7   to it and you guys have never raised it?  And they
 8   said, Let me look at it.  The next day they
 9   confirmed, Yes, we're seeking it under RFP 1, 2, and
10   that day --
11                   THE COURT:  And what date was that?
12                   MR. KOPPELMAN:  That was -- the
13   meet-and-confer was on February 16th, and they
14   confirmed back on February 17th.  They were, in fact,
15   seeking it under RFP 1, and they issued a
16   supplemental ESI request on that date, two days after
17   the -- the date expired for issuing such requests --
18                   THE COURT:  Okay.
19                   MR. KOPPELMAN:  -- in the scheduling
20   order.
21                   THE COURT:  But did you realistically
22   have any doubt, especially given the last hearing
23   where this was discussed, that -- at least since that
24   first request for production, that plaintiff was
25   seeking the source code?  I don't.  I mean, I was at

 1    the last hearing, and my -- again, unless my

 2    recollection is completely wrong, this was one of the

 3    big arguments in the motion -- in -- in the argument

 4    over the motion to stay was -- was the issue of

 5    source code, and -- and over the issue of sufficiency

 6    of the allegations was their -- them saying, We need

 7    to get to the source code; we need to get to the

 8    source code; we need to get to the source code.

 9                  And my recollection may even be that

10    there was some discussion as to whether everything

11    but the source code should be stayed.  And, again, I

12    may be wrong because this is months ago, but that's

13    my recollection of the hearing was we even discussed

14    potentially staying all other aspects of the

15    discovery except for the source code.

16                  So if that's the case -- the purpose of

17    an ESI protocol is a couple-fold.  One, it's to

18    protect inadvertent disclosures.  Because, obviously,

19    whenever we're talking about things such as 10,000

20    emails, there is the danger that somewhere in there

21    something privileged is going to be produced.  And

22    one of the purposes of an ESI protocol is to assure

23    that something privileged doesn't accidentally get

24    produced, and it gives the greatest clawback that you

25    can give to that.

 1                    MR. KOPPELMAN:  Yep.

 2                    THE COURT:  The second protocol is to

 3     try to limit the cost of -- of electronic discovery,

 4     in that what is trying to be done is to come up with

 5     search terms and other things so that rather than

 6     going through 10,000 or 100,000 emails, reading each

 7     one and seeing whether or not it's relevant, we can

 8     enter a search code or a search term and if it

 9     doesn't hit one of those terms, we assume it's not

10     relevant, even though we may be missing some

11     documents.  But it saves the cost.  Neither of those

12     seem applicable here to --

13                    MR. KOPPELMAN:  They are.  They are,

14     Your Honor.

15                    THE COURT:  How?

16                    MR. KOPPELMAN:  Because the same issue

17     applies with respect to source code.  If you just

18     dump all -- and they've requested all -- of

19     defendant's source code, it's millions of lines of

20     code that no one could possibly read.  It's a huge

21     data dump of electronic discovery.  They don't need

22     all of it.

23                    THE COURT:  So how would you do -- how

24     would you limit it down?  How would you limit the

25     review?

**Four Winds Interactive, LLC vs.**
**22 Miles, Inc.**

**Discovery Hearing**
**March 22, 2017**

Page 30

```
 1              MR. KOPPELMAN:  Search terms is
 2  certainly one way to do it.  Identifying the relevant
 3  code.  Like, here's the functionality that we think
 4  you copied.  We need the code related to this
 5  functionality.  This functionality you copied.  We
 6  need the code related to this functionality.
 7              That's how it's typically done, and --
 8  and they've refused to do that.  They just want
 9  blanket code.  They just want to be able to rummage
10  around in all of our code and just find things they
11  think might be similar to -- to have a case, and
12  that's not the right way to approach this and it's
13  not --
14              THE COURT:  Let me ask -- let me ask
15  plaintiff.  Why can't you limit it down in -- and
16  this is now going back to the interrogatories.  Why
17  can't you limit it down to saying, We believe that it
18  is this portion of FWI source code that has been
19  infringed upon?  And A) that may limit the review --
20  the source code review, and B) it will at least give
21  an answer to the questions that they're seeking,
22  which is, What is it that you allege are being
23  infringed?  It seems like you could limit it that
24  way.
25              For example, if what we believe is
```

1   being infringed upon is the -- the wayfaring aspect

2   of this that we can --

3              MR. POSTHUMUS:  Wayfinding.

4              THE COURT:  Wayfinding, that we can

5   limit it to just that.  So why can't you limit it

6   that way in interrogatory responses, and then, to the

7   extent I order a source code review, then they can,

8   in turn, limit what they turn over to you?

9              MR. POSTHUMUS:  I -- I -- I certainly

10  think we -- I think we've done that already.  Have we

11  limited it to the wayfinding function?  The source

12  code?  If not, Your Honor, then, certainly, we can

13  meet and confer.  And I think we've talked about,

14  like -- I think your recollection of the hearing is

15  100 percent accurate.  Because one of the things we

16  even talked about the hearing in January was talking

17  about getting -- starting with the source code that

18  existed as of the date of the filing of the

19  complaints.

20              And, clearly, the focus here is on the

21  wayfinding function.  I think it certainly goes way

22  beyond us having to identify variable names and

23  elements, and things like that, that they can search

24  the code and say, Well, it's here or it's not here.

25  That's a guessing game for us.  Because if they took

Page 32

1    our code, what they would have done is they would

2    have tried to look at it, build it out and then --

3    and then look at their variability, the variables and

4    terms and things that they use and then build it back

5    in.  Right?  Kind of make the changes and kind of

6    work their way back into the code that they would

7    have taken.

8              Now, we don't know if that occurred,

9    but we need to look at the source code to do that.

10   And I think the wayfinding function is the -- you

11   know, is the critical function that we believe has

12   been taken.  That's the function of the copyright.

13             Now, with regard to -- right.  Yeah.

14   So -- and as Patty just pointed out to me, it's an

15   integrated platform, right.  You know, I think we are

16   more than open to meeting and conferring,

17   specifically identifying, you know, portions of code.

18   We're not interested in seeing millions of lines of

19   code, right.  Nobody is.  And we're willing to target

20   and try to move, but we don't know what's -- you

21   know, how they break it up or what they do with

22   regard to their code.  That's something that, you

23   know, obviously, we're hoping to find out a little

24   bit in the Rule 30(b)(6) deposition that's coming up

25   in April, but, you know, that's something we need to

 1    meet and confer and -- and we can, to make sure that

 2    it's, you know, an efficient review.

 3              THE COURT:  Well, here's -- here's what

 4    I think should happen, and then I'll hear from either

 5    of the parties.  I do think that plaintiff should be

 6    given some opportunity to review source code here.

 7    The objections to it are, first, that they didn't

 8    pursue it through the ESI protocol which, of course,

 9    only matters, in reality, if it doesn't also fall

10    under the local patent rules.  The objection to that,

11    largely, being relevance, and I think it is relevant.

12    There may be some way to limit the review as both

13    sides seem to be suggesting today, but I do think

14    that it's relevant.

15              To the extent that they -- that even if

16    it weren't -- didn't fall under the court's local

17    patent rules, the only objection now, at least -- at

18    least as far as the timing of it, is it's two days

19    late.  Even if I were to conclude that it was two

20    days late -- the request -- the court has the ability

21    to extend deadlines for good cause shown.  And

22    amongst the factors that the court has to consider

23    is:  Whether trial is imminent.  It is not.  Whether

24    the request is opposed.  It is, but it's opposed in

25    every single one of these cases.  Whether the

1    non-moving party would be prejudiced.  I don't think

2    that there is prejudice here.  Whether the moving

3    party was diligent in obtaining discoveries within

4    the guidelines established by the court.  Here, the

5    initial request was made months earlier.

6                    There appears to be some confusion as

7    to whether it also needed to be through the ESI

8    protocol or not.  Nonetheless, I find that -- that

9    they were diligent.  The foreseeability of the need

10   for additional discovery in light of the time allowed

11   for discovery by the district court.  This issue of

12   source code has been talked about in front of me at a

13   previous hearing, so it was certainly anticipated

14   that this would come up.  And the likelihood that the

15   discovery will lead to relevant evidence and, as I've

16   already indicated, I find that it will.

17                   So I'm not going to, at this point,

18   dictate the -- the means and manner of doing the

19   source code review because, frankly, I don't think

20   that I'm well-suited for this.  I think that the

21   parties are better suited as they are the experts in

22   this area.  And a way to try to limit it that will

23   hopefully be better than something that I would come

24   up with off the top of my head.  And so I'm ordering

25   them to meet and the confer about the manner in doing

1    that source code.

2              If after that meet-and-confer they can

3    not reach an agreeable method or way to do this, then

4    contact my chambers and we'll do a continued

5    discovery -- or, yeah, discovery hearing on that

6    issue and find a way to limit it down.

7              I encourage plaintiff between now and

8    then -- now and the conferral to try to delineate as

9    best you can what portions of FWI's code you believe

10   to be infringed because I think that will assist in

11   trying to review the source code.  And to the extent

12   that that requires supplemental answers to

13   interrogatories 1 and 2, then you should supplement

14   that.  But that's my ruling with respect to the

15   source code review and Interrogatory 1 and 2.

16             Anything further or any clarification

17   on either of those issues?

18             MR. KOPPELMAN:  May I approach, Your

19   Honor.

20             THE COURT:  Sure.

21             MR. KOPPELMAN:  Ryan Koppelman.  I

22   understand your court's order.  In terms of the

23   meet-and-confer, I guess from my perspective it would

24   be helpful if we had some guidance at least at the

25   level of should it be portions of code?  Because

Page 36

1    that's been the dispute.  We -- we sent a letter back

2    in February saying we were open to -- to producing

3    portions if they could help us identify any, and they

4    said they want it all.  And if we come back and meet

5    and confer, I'm concerned that we just -- we're right

6    there back at that.

7            THE COURT:  It may -- what is -- let me

8    ask each side.  From your perspective, what is the

9    harm -- especially if it were under an equivalent of

10   an attorneys'-eyes-only or expert-eyes-only review --

11   what is your concern about producing the entire

12   source code?  I get if you produce your source code

13   and FWI's principals get to look at it that the

14   concern is they learn something from your source code

15   or they do something that could harm you as a

16   competitor.  But if it were under a -- again, the

17   equivalent of attorneys' eyes only or -- because it's

18   probably an expert who's going to do the review as

19   opposed to the attorney themselves -- under an expert

20   eyes only, what's the harm of doing an entire -- of

21   producing the entire source code?

22           MR. KOPPELMAN:  It's not so much a harm

23   issue as -- it's just overbroad discovery beyond

24   what's really relevant just to give everything as

25   opposed to what's at issue.  But, you know, if Your

1   Honor thinks that -- that it's -- that all -- it

2   should be all.  Then I think that sort of simplifies

3   the meet-and-confer, frankly, if that's the guidance

4   of what we should be meeting and conferring on.  If

5   the meet-and-confer is supposed to be intended to

6   come to some --

7                THE COURT:  Right.

8                MR. KOPPELMAN:  -- you know, agreement

9   about what portions are actually relevant and

10  appropriate for review, you know, then that would be

11  helpful for the parties to understand when they go

12  into the meet-and-confer.

13               THE COURT:  Let me hear from plaintiff

14  as to -- as to their view as to how it may be

15  narrowed.

16               MR. POSTHUMUS:  Well, Your Honor, I

17  would have to talk to, you know, my client to get

18  some better ideas here in terms of how it would be

19  narrowed, but we can certainly try.  And we're not,

20  like I said before -- this is John Posthumus, by the

21  way.  We're certainly not interested in looking at

22  millions of lines of code, right.  That's just not --

23  but at the same time, it's really hard to kind of --

24  we don't know what their code is and we don't -- you

25  know, we haven't seen it, so it's almost a little bit

1   of a shot in the dark in terms of trying to define

2   parameters.

3                I suspect that we can work through and

4   define some broad parameters that make it reasonable

5   and efficient in order to assess, you know, the

6   strength of the copyright infringement claim, and --

7   and that is, you know, really the ultimate goal here.

8                THE COURT:  Okay.

9                MR. POSTHUMUS:  We don't see any harm,

10  and, certainly, you know, one of the things that

11  Mr. Koppelman -- you know, he mentioned a little bit

12  earlier with regard to our source code, right, the

13  FWI source code, we have been more than willing to

14  make that available -- the source code that we

15  believe to be infringed under the -- pretty much the

16  identical, you know, limitations that they're going

17  to make their source code available.

18               So there's a balance here in terms of

19  -- you know, that certainly guides the parties

20  because we can't say, Well, you get to see only this

21  part of ours, but we get to see everything over here.

22  It's a balance component that, I think, will, you

23  know, certainly give us some momentum towards an

24  agreement without having to approach Your Honor again

25  on this issue.

```
 1              THE COURT:  What -- what I'm going to
 2    do is I'm going to have the parties meet and confer.
 3    If we're back here again, especially since defense is
 4    -- is coming in from out of town, I'll allow you to
 5    participate by phone at that hearing.  And that's
 6    (indiscernible) for any of these discovery hearings.
 7    You don't have to fly in from Palo Alto every -- for
 8    every one of these.
 9              But I think that -- I think that some
10    conferral on this would be helpful.  If, at the end
11    of the day, it can't be done without a complete
12    review of source -- of the entire source code, and if
13    there really is no harm in that, especially, again,
14    under parameters, I'd be inclined to do it but it
15    sounds like there may be a way to limit this down.
16    It sounds like you might have some ideas on how to
17    limit it down and it sounds like their client may
18    have some ideas on how to limit it down, and I think
19    that's a discussion that needs to take place.
20              MR. KOPPELMAN:  Fair enough, Your
21    Honor.  Two points.  One is, this is important to my
22    client, that's why I'm here.
23              THE COURT:  Sure.
24              MR. KOPPELMAN:  My client is not able
25    to attend.  The other client is (indiscernible).
```

Page 40

```
 1                    THE COURT:  Right.
 2                    MR. KOPPELMAN:  This is important to
 3     both parties and that --
 4                    THE COURT:  No, I appreciate that.
 5                    MR. KOPPELMAN:  -- is why I'm here in
 6     person.  I appreciate your offer to attend
 7     telephonically, but this is important to the clients.
 8                    THE COURT:  And I appreciate that.
 9                    MR. KOPPELMAN:  And then in terms of
10     harm, you know, what -- what my colleague said
11     touches on it, right.  So if because this is going to
12     be reciprocal.  There's going to be two
13     co-productions.  There's going to be ours and theirs,
14     which they've withheld based on -- because we -- this
15     is sort of the gamesmanship we've talked about.
16     We've never seen their code because they say, Well,
17     we're not going to give it to you until you give it
18     to us.
19                    But if they give us their code and they
20     give us everything and we have to give everything,
21     there's this massive, huge review that comes back on
22     us.  So limiting it down does limit the burden on the
23     defendant in terms of what we'd have to review in
24     terms of reciprocal code from the plaintiff.
25                    So that's at least one reason why it
```

Page 41

1    makes sense to limit it down instead of just having

2    it be everything from both sides.

3                    THE COURT:  Well -- and I think that

4    makes sense.  And what they're saying is, they may be

5    able to do that and so that's why -- I'm acting, you

6    know, in a bit of a vacuum here because, like I say,

7    I'm not familiar with either -- either set of codes

8    and so I don't have any way to sit here and

9    intelligently say here's how you limit it down

10   because I don't have any idea --

11                   MR. KOPPELMAN:  Right.

12                   THE COURT:  -- because I don't have

13   either code.  But I do think it makes sense for the

14   parties to discuss this and see if there is a way to

15   limit it down to limit the expense on it.  And so --

16   so that's what I'm going to order --

17                   MR. KOPPELMAN:  Okay.

18                   THE COURT:  -- the parties to do on

19   that.

20                   MR. KOPPELMAN:  Okay.

21                   THE COURT:  What --

22                   MR. KOPPELMAN:  There are a few other

23   issues.

24                   THE COURT:  Go ahead.  I --

25                   MR. KOPPELMAN:  (Indiscernible).

Page 42

 1              THE COURT:  I -- well, I was about to

 2  turn to Interrogatory 6, which is the next one that's

 3  listed here, which is to, quote, Identify all

 4  customers and users of FWI products that you contend

 5  practiced the asserted patent and/or are covered by

 6  the asserted copyrights.

 7              And it appears that, at least from the

 8  allegation here, the plaintiff has refused to provide

 9  any response.  So I'll ask plaintiff why, especially

10  since -- given that the complaint alleges that there

11  were a customer or customers, and given that -- at

12  least one of the contentions is, is jurisdiction, why

13  haven't you identified any of the customers to this

14  point?

15              MR. POSTHUMUS:  Well, Your Honor, I

16  don't know if it's identifying any.  I think they

17  want to identify all customers.  We have a customer

18  list that exceeds 5,000 companies or licensees.  So

19  you're -- you're -- in theory what they're asking

20  for, and we've talked about this, is that they want

21  the specific identity of each one of those 5,000.  We

22  don't think that that's necessary.

23              We're certainly willing to, you know,

24  provide some on the list if they're willing to kind

25  of narrow that, you know, why -- you know, what they

Page 43

1  need it for.  And, certainly, our, you know,

2  corporate witness will be available.  We'll have

3  individuals that will be deposed in the next month or

4  two, and they can be deposed on the allegations in

5  the complaint as well with regard to the customers.

6             THE COURT:  Let me ask the defendant.

7  Why do you need their entire customer base?

8             MR. KOPPELMAN:  Well, it's -- it's not

9  their entire customer list, it would be the ones that

10  practiced the asserted patent and practiced the

11  copyrights.  And this goes directly to what the value

12  of the patent is.  Consumer demand, consumer

13  preference of what these customers think and care

14  about and who they are and how much they buy it for.

15             All of this stuff is relevant to

16  damages.  And they've put it at issue by putting into

17  the complaint.  They've mentioned 5 -- we've got

18  5,000 customers.  They've put that at issue.  And so,

19  either they're not allowed to introduce this to

20  support their case or we're entitled to discovery on

21  it.

22             THE COURT:  Explain to me how it's

23  relevant to damages.  In other words -- well, I'll

24  leave it up --

25             MR. KOPPELMAN:  So patent -- so one of

Page 44

1    the key aspects of patent damages is whether there's

2    consumer demand for the patented feature versus

3    non-infringing alternatives.  And if their customers

4    buy alternative products from them that don't have

5    the patented feature in it and pay more money, that's

6    relevant to damages.

7                    What the -- what their customers,

8    whether they even -- whether they even -- whether

9    there's any demand for the patented feature matters.

10   And also, they still have an unfair competition claim

11   in this case that they've sort of lost customers,

12   they've lost business.  These allegations are still

13   in the complaint.

14                   THE COURT:  But wouldn't that go to --

15                   MR. KOPPELMAN:  We think they're

16   preempted.

17                   THE COURT:  Wouldn't that go to -- to

18   the extent it survives a motion to dismiss, wouldn't

19   that go to any customers lost as opposed to customers

20   that they have?

21                   In other words, what you're getting at

22   is a customer list, doesn't that issue go to

23   customers lost as opposed to customers that they've

24   retained?

25                   MR. KOPPELMAM:  Well, we would want to

Four Winds Interactive, LLC vs.                                          Discovery Hearing
22 Miles, Inc.                                                            March 22, 2017

Page 45

1    know both and understand -- be able to -- when we

2    take the deposition -- he's saying we can ask these

3    questions at deposition, but without an interrogatory

4    response.  There's no way I can ask in a deposition,

5    Who are your 5,000 customers?  You know, and being

6    able to -- these -- you know, these customers are no

7    longer buying from you, you know, why?  That kind of

8    data is highly relevant, and they've put it at issue.

9    And I'll just say, I think defendants are entitled to

10   discovery on it.

11                THE COURT:  Let me ask plaintiff.  What

12   is the specific objection to this?  I mean, if its

13   burden -- I can't -- my guess is your client has a

14   customer list somewhere that's readily accessible.  I

15   can't imagine it's much of a burden to produce it.

16   What -- what's the specific objection?

17                MR. POSTHUMUS:  Well, I think the

18   specific objection, I think, is several-fold.  I'm

19   not sure it's burdensome.  I think they can probably

20   create a list and produce it.  I think a lot of it is

21   driven by relevancy, and this concept of an

22   interrogatory request that says, Give me all of your

23   customers.  And why is that necessary?

24                I -- I would disagree with

25   Mr. Koppelman with regard to the argument on

Page 46

```
 1   relevancy but, in any event, I think the allegations
 2   that are in the complaint can be tested other ways,
 3   right, other than, you know, give me a list showing
 4   5,000 customers.
 5                  I think they can be tested through
 6   deposition testimony.  They can certainly be
 7   narrowed.  You know, we'd like to see -- if it's for
 8   personal jurisdiction purposes, show me the customers
 9   in a, you know, particular geographic area or
10   whatever.  We're willing to work with them on that,
11   we just find that this request to identify all
12   customers to -- to be overbroad, and --
13                  THE COURT:  Go ahead.
14                  MR. KOPPELMAN:  Your Honor, briefly.
15   If they go -- if they come to trial and they're
16   allowed to say to the jury, We have 5,000 customers
17   that buy our patented products, we should be able to
18   have ammunition to cross-examine and test that --
19   that.  Whether, in fact, there are 5,000.  Whether,
20   in fact, each of them -- whether they have 5,000
21   customers in general.  How many of those actually
22   bought patent-practicing products?
23                  THE COURT:  Well, what's the relevance
24   of that statement, though?  I mean --
25                  MR. KOPPELMAN:  They're making it sound
```

Page 47

1   like they have a product that's in high demand.  Lots

2   of people buy it; therefore, it's a valuable

3   invention.  That's -- that's at least my

4   interpretation of why they're going to make it.  That

5   would be the impression on the jury, and we should be

6   able to cross-examine it and get to the facts of

7   whether this is, in fact, true.

8              Who are these customers?  Did they

9   actually buy patent-practicing products or did they

10  buy something else?  Did they actually buy products

11  that are covered by the copyrights or did they buy

12  something else?  And just making these blanket

13  statements without us getting behind it and seeing if

14  it's true or not is not fair.  We should be able to

15  test it.

16             THE COURT:  Let me ask --

17             MR. KOPPELMAN:  With -- with the

18  details behind it.

19             THE COURT:  Let me ask plaintiff this:

20  Isn't -- let's say that you provide this list of

21  5,000, and they go out and they speak to a

22  representative sample of 100 of them, and 90 of them

23  say, Oh, no, we didn't buy this for this copyrighted

24  feature, we bought this because we didn't know there

25  was another company that sold this out there because

Page 48

1    -- who knows, but not because of this copy -- because
2    of some other feature with it, because -- because we
3    don't care about the wayfaring aspect of this, we
4    just think the map of it looks nice and that's why we
5    bought it.  Wouldn't that be relevant to damages, and
6    if the burden -- if there really is no burden here,
7    which you're telling me there's not, and the only
8    objection, really, is relevance, it seems that that's
9    relevant.
10              MR. POSTHUMUS:  Well, I -- you know, I
11   think it has this appeal that it is relevant, right.
12   I think it's also -- they're asking a lot of
13   information -- you know, a lot of critical
14   information from my client that's not publicly known.
15              They're going to go talk to these folks
16   and then they're going to -- you know, it would seem
17   to me if we were going to say something -- and we
18   haven't said this, but that client X, Y, and Z has
19   the product, right, then, you know, certainly that
20   would open that part up for discovery and to get into
21   it.  But to -- really, there's kind of a dangerous
22   component that -- in the scenario that you raised,
23   which is, you know, they have the ability to start
24   independently contacting these companies and to
25   start, you know, potentially, harass them, right, and

 1    to say, you know, we want to know this.

 2                   And, you know, are they going to take

 3    30(b)(6) -- or subpoena each one of these companies

 4    and take depositions?  Are they going to call them?

 5    Are these calls going to be dismissed because of

 6    that?  You know, if we talk about specifics, right, I

 7    think we can provide -- if they narrow their request,

 8    we're more than willing to provide a specific

 9    response, but something that says, Identify all

10    customers, we continue to say -- or believe it's over

11    broad.

12                   THE COURT:  Well, how would you limit

13    it?

14                   MR. POSTHUMUS:  Well, I think there's a

15    natural limitation from the standpoint of -- you

16    know, obviously, if Mr. Koppelman wants something

17    specific we can provide that.  You know, for

18    instance, the personal jurisdiction issue or

19    whatever, we can certainly tailor the response to

20    that.

21                   If there is, you know, some mechanism

22    to, you know, differentiate between sizes, right.

23    You know, we're talking about we want to see your

24    customers that have a -- you know, that are of a

25    certain, you know, physical size or volume or

Page 50

```
 1   whatever --

 2               THE COURT:  How many customers in

 3   Colorado do you have?

 4               MR. POSTHUMUS:  One moment, Your Honor.

 5               THE COURT:  Sure.

 6               MR. POSTHUMUS:  And this is just an

 7   estimate --

 8               THE COURT:  Right.

 9               MR. POSTHUMUS:  -- but 50 to 100.

10               THE COURT:  All right.  What I'm going

11   to initially do is I'm going to grant Number 6 and

12   limit it to Colorado.  One, because I can't -- I

13   honestly can't fathom that defendant will actually

14   interview all 5,000 people to see whether or not --

15   if it's a representative sample of somewhere between

16   50 and 100, which is what's being represented to me,

17   seems like an initial starting point to get at what

18   defendant is trying to get to.

19               If after that representative sample --

20   if it's either not 50 to 100 and it turned out to be

21   five, then I'll consider expanding that beyond

22   Colorado.  If -- if after that initial sample they

23   speak to 50 people and it turns out that 48 of them,

24   or some number along that line, say, No, this had

25   nothing to do with the -- we didn't purchase this for
```

Four Winds Interactive, LLC vs.                                        Discovery Hearing
22 Miles, Inc.                                                         March 22, 2017

Page 51

1    any of the reasons set forth in -- in the copyrighted
2    material, we did it for -- as I said, we liked -- the
3    maps look nice, then I'll consider expanding it at
4    that point too.  But initially, I'll limit it to
5    Colorado.
6                    That turns us to Interrogatory
7    Number 8.  Give me a moment here.  And I don't think
8    I have exactly what Interrogatory 8 says, so why
9    don't we start with the defense.  You can quote for
10   me exactly what Interrogatory 8 says and then --
11                   MR. KOPPELMAN:  Sure, Your Honor.
12                   THE COURT:  -- and then where we stand
13   currently on this.
14                   MR. POSTHUMUS:  Your Honor, to be
15   efficient, could I just give the court an update --
16                   THE COURT:  Sure.  Sure.
17                   MR. POSTHUMUS:  -- I think, and then
18   maybe we can work through this.
19                   So plaintiff has provided supplements
20   to Interrogatory 8, and we did not realize that there
21   was a continuing concern on the defendant's counsel's
22   part with regard to the supplementation until we saw
23   the draft of the joint statement.  And we are
24   currently working to supplement the response to raw
25   dates to include the requested information.

Four Winds Interactive, LLC vs.
22 Miles, Inc.

Discovery Hearing
March 22, 2017

Page 52

```
 1                  THE COURT:  Okay.  Then I'll order that
 2      that be -- that that supplement be completed by the
 3      March 31st deadline that I set for -- for the others.
 4      And, again, if it's still insufficient at that point,
 5      contact my chambers and we can -- you know, we can
 6      have a hearing.  But it sounds like they're going to
 7      comply with what's requested, unless you think
 8      differently.
 9                  MR. KOPPELMAN:  I -- I appreciate the
10      representation.  This goes back to October, November.
11      They promised to supplement.  There wasn't even much
12      meet-and-confer on them.  They just quickly admitted,
13      Yeah, we need to give you more on that, and then they
14      never did.  And then we met and conferred on it again
15      in February, and, like, Yeah, we're going to get that
16      to you.  And they gave a date and then the date was
17      blown.  And then we finally got it last week right
18      before the stip was due, and they didn't really --
19      they added, I think, three sentences.  They added
20      virtually nothing to it.
21                  So this general statement that, We're
22      going to supplement, we've heard before and it
23      doesn't give us much comfort.  If the court's going
24      to order it we can proceed that way, but there are
25      glaring deficiencies with it.
```

```
 1                    THE COURT:  What is it, exactly, that
 2   you are you seeking?
 3                    MR. KOPPELMAN:  Well, there are
 4   multiple things in the request, and I can read the
 5   request to you here if you --
 6                    THE COURT:  Yeah, that would be great.
 7                    MR. KOPPELMAN:  The interrogatory.
 8   Sure.  Separately for each asserted claim of the
 9   asserted patent -- there's only one claim, so there's
10   only one claim -- describe in detail all facts
11   concerning its conception and reduction to practice,
12   including the date of conception, the date of
13   reduction to practice, any steps showing reasonable
14   diligence, the date of first public use, date of
15   first offer of sale, date of first sale, including
16   any documents corroborating such facts, and persons
17   you may rely on to corroborate such facts.
18                    Plaintiffs in patent cases often try to
19   get an early invention date because, then, defendants
20   have to find prior art before that early date.
21                    THE COURT:  Okay.
22                    MR. KOPPELMAN:  But in order to claim
23   that early date they've got to show a whole bunch of
24   stuff.  They've got to show a conception date, which
25   they still haven't given us, and show all the steps
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                     March 22, 2017

Page 54

```
 1   they took to reduce it to practice.  You know, when
 2   they first commercialized it.  These things.  And
 3   this is -- this basic.  This is something we
 4   requested back in July and we still don't have.  And
 5   I don't think there's a good excuse for it.
 6              And I appreciate Your Honor being
 7   willing to order it.  I think each of these things we
 8   need specificity on and we don't have it yet.
 9              THE COURT:  I am --
10              MR. KOPPELMAN:  And the patent --
11              THE COURT:  I am going to order that
12   they provide the dates by March 31st.  I agree that
13   I'm not sure why this wasn't provided sooner, other
14   than what I heard earlier, which is something that
15   sounds awful close to gamesmanship, which is, You're
16   not providing us what we want and so we're not going
17   to provide you what you want.  And that's not federal
18   court.  So I'm going to order it by March 31st.  If
19   it's not produced or it's incomplete, then -- you
20   know, then contact my chambers and then, you know,
21   we'll look at what remedies under Rule 37 are
22   available at that point.
23              MR. KOPPELMAN:  Thank you, Your Honor.
24              MR. POSTHUMUS:  Your Honor, if I may
25   just quickly address -- I think Mr. Koppelman, kind
```

Page 55

1    of, wants a specific date of conception, right.  You

2    know, April so-and-so, you know, 2011, 2000 --

3    whatever, right.  You can't present that.  There's --

4    there's -- we're going to be providing a complete

5    response, but it's like conception occurred during a

6    certain time period, you know, and it might be a few

7    months or kind of that type of thing.  It's not going

8    to be, you know, in one year.

9              But I would prepare Your Honor for the

10   -- you know, that these types of responses are not

11   necessarily susceptible to an exact date and time,

12   you know, that they occurred.  And, certainly, that's

13   subject to deposition testimony as well.

14             THE COURT:  Go ahead.

15             MR. KOPPELMAN:  There's a corresponding

16   issue with the conceptual reduction to practice which

17   is, the local patent rules with the infringement

18   contentions there's supposed to be a whole production

19   of documents showing conceptual reduction to

20   practice.  And we don't -- we don't have that either.

21   That goes hand in hand with this interrogatory.  And

22   their interrogatory asked for identification of

23   documents corroborating these dates.

24             THE COURT:  Right.

25             MR. KOPPELMAN:  All these things, and

 1    we don't have that either.

 2                    THE COURT:  Well, I'm assuming, maybe

 3    wrongfully so, that that's coming in the production

 4    that's coming on the 31st of this month.  But as you

 5    read the request, it certainly includes documents

 6    that -- that show that certain documents exist.

 7                    I think the last one is

 8    Interrogatory 9, communications with third parties

 9    about defendant or the allegations in the amended

10    complaint.  And the response to this -- the defense

11    maintain that the response to this is incomplete.

12    What -- why don't you update me on this one.

13                    MR. POSTHUMUS:  One moment, Your Honor.

14    Yeah, I'll address the court.

15                    All right.  Your Honor, John Posthumus.

16    With regard to Rog Number 9, we had a meet-and-confer

17    and defendant's counsel provided kind of a checklist,

18    if you will, of the communications they were looking

19    for supplementation on on March 3rd, I believe, and

20    we've been working through that checklist and will

21    provide an updated response by March 31st.

22                    THE COURT:  Okay.  Does that satisfy

23    the defense on that?  I mean, you may not know it

24    until you see the supplement, but --

25                    MR. KOPPELMAN:  Your Honor, I guess, I

1    may sound like a broken record, but this stuff we

2    asked for back in July.  This is stuff that's in

3    their complaint and we can't get responses on it.  I

4    appreciate the willingness to supplement, but this is

5    after multiple meet-and-confers over months just to

6    hear the same thing today that we've been hearing is,

7    We'll supplement, We'll supplement.

8            So I appreciate the court's willingness

9    to order, but there's somewhat of a pattern here

10   that's frustrated my client to, say the least.

11           THE COURT:  And I can understand that.

12   And -- and I am ordering it today because, frankly,

13   by making it an order of the court if it's not

14   produced by the 31st, it gives me more options as to

15   what I can do in response to that failure to do it.

16   So it will be an order of the court today that that

17   interrogatory be supplemented too.

18           MR. KOPPELMAN:  I appreciate that, Your

19   Honor.  There's -- there's one other issue --

20           THE COURT:  Okay.

21           MR. KOPPELMAN:  -- we raised, and I

22   don't know if you had it sort of on your checklist,

23   that I would like to discuss with you.

24           THE COURT:  Go ahead.

25           MR. KOPPELMAN:  That's the deficiencies

Page 58

1    in their infringement contentions.  It relates to

2    source code.  We've already covered source code, but

3    it's also independent of source code as to their

4    obligations under the local rules of what they're

5    supposed to disclose in their infringement

6    contentions.  And I can be brief about this.

7                    THE COURT:  Okay.

8                    MR. KOPPELMAN:  So the rules require

9    that plaintiff serve contentions to identify, quote,

10   The specific location of each element of the asserted

11   claim within each accused instrumentality.  That's

12   Local Patent Rule 4(b), and the plaintiff hasn't done

13   this.

14                   Claim 1 requires two text entry fields

15   for entering two customized instructional phrases to

16   show the supposed location in defendant's software of

17   these text boxes for entering customized

18   instructional phrases.  The plaintiff's contentions

19   on page 4 -- and I can hand you up a copy.

20                   THE COURT:  Yeah.  That would be great.

21                   MR. KOPPELMAN:  May I approach?

22                   THE COURT:  Yeah.  Thank you.

23                   MR. KOPPELMAN:  So on page 4 they point

24   to a screenshot of defendant's software.  That

25   screenshot on page 4 has been logged as being on

Page 59

1    defendant's website, public website since at least

2    July 14th, 2011, which is more than a year before the

3    patent -- the plaintiff filed their patent

4    application.

5                    THE COURT:  So this is -- this is

6    page 4 of the exhibit, correct?  Because it's not --

7    there's Exhibit 1.  It looks like it's page 4 of

8    Exhibit 1.

9                    MR. POSTHUMUS:  That's correct, Your

10   Honor.  Do you need a copy?

11                   MR. KOPPELMAN:  Yes.  Yes, page 4 of

12   Exhibit 1, Your Honor.

13                   THE COURT:  Okay.  Okay.  Go ahead.

14                   MR. KOPPELMAN:  So as a result,

15   plaintiff is accusing defendant's prior art software

16   for that limitation.  And that's not a proper

17   infringement contention.

18                   In addition, Claim 1 explains, quote,

19   Path segments have directional aspects defined by

20   directions of travel relative to a map location.  And

21   then it further explains that the customized

22   instructional phrases are supposed to, quote, Explain

23   the directional aspects of the path segments.

24                   And then, lastly, the claim requires a

25   first customized instructional phrase explaining

Page 60

```
 1   direction of travel along the path segment toward a
 2   first map location.  And then a second customized
 3   instructional phrase explaining traveling in a
 4   different direction along the path segment away from
 5   the first location.
 6              That's what Claim 1 says.  And to show
 7   a customized instructional phrase, plaintiffs
 8   contentions point to a single phrase between
 9   reception and entrance.  But "between reception and
10   entrance," that phrase, it merely describes the
11   location between two things and not a direction.  The
12   phrase "between reception and entrance" is void of
13   any directional aspect.  It doesn't explain a
14   direction of travel relative to map locations.  It
15   does not describe traveling from A to B nor B to A.
16   And this is clear from page 5 of plaintiff's
17   contentions.
18              If you look on page 5 there's a
19   screenshot, and there's a 1, 2, 3 list from
20   defendant's software.  And next to 1 it says, quote,
21   You are here, colon, office centerhouse one, level 3
22   between reception and entrance.  That's the starting
23   location for the directions.  And then next, 2 and 3,
24   there's some directions of travel, but those are the
25   preprogrammed type that the patent excludes.
```

Page 61

```
 1                  And so that screenshot makes clear that
 2    the phrase "between reception and entrance" only
 3    describes the location on a map and not, as the
 4    patent requires, directional aspects defined by
 5    directions of travel relative to map lotions.  And in
 6    the end, plaintiff has not identified two text boxes
 7    in defendant's software for entering two different
 8    customized instructional options, which explain two
 9    different directions of travel relative to a map
10    location.  It's not there.  And --
11                  THE COURT:  Well, but wouldn't -- I'm
12    just reading this now, obviously.  But wouldn't the
13    phrase "start left" and then "go left" --
14                  MR. KOPPELMAN:  Right.
15                  THE COURT:  -- contain the directional
16    aspects of it?
17                  MR. KOPPELMAN:  Yes.  And those are --
18    this is exactly what their patents exclude, and
19    that's not what they've accused of infringement.
20    Because the start left/go lefts are the basic --
21    those aren't customized instructional phrases.
22    That's the -- that's the standard ones.
23                  THE COURT:  Right.
24                  MR. KOPPELMAN:  Go left, start left.
25    What they're saying the custom -- what they've
```

1    accused is that location.

2                    THE COURT:  Is go past the Starbucks,

3    make a left at the Starbucks and then go to Sears,

4    and make --

5                    MR. KOPPELMAN:  Right.

6                    THE COURT:  -- a right at Sears.

7                    MR. KOPPELMAN:  From A to B.

8                    THE COURT:  Right.

9                    MR. KOPPELMAN:  And then another one

10   from B to A.  And this phrase "between reception

11   entrance" is not that.  It's plainly not that.  And

12   they shouldn't be able to point to a location on a

13   map and call it a direction of travel and say they've

14   complied with the patent local rules.  That's our

15   position and we think they should be ordered to

16   comply.  And I'm not sure they can.  I also think

17   this is an issue in terms of their inability to

18   actually find in our software what actually

19   corresponds to their patent.

20                   THE COURT:  And ultimately, this only

21   goes to the patent portion of the case and not the

22   copyright portion, correct?

23                   MR. KOPPELMAN:  Correct.

24                   THE COURT:  Okay.

25                   MR. KOPPELMAN:  Correct.

Page 63

```
 1              THE COURT:  Let me ask -- let me ask
 2   plaintiff on this.  It's -- it does seem like if what
 3   you are alleging the violation of the patent is, is
 4   the customizable phrase, the example I just used, go
 5   past the Starbucks, make a left.  This doesn't say
 6   that.  This says start left and then go left.  So
 7   where's the -- where's the infringement on here?
 8              MR. POSTHUMUS:  So, Your Honor, I think
 9   there's a little bit of -- what I hear Mr. Koppelman
10   arguing is his client's non-infringement position.
11   And I hear him making a reference to prior art, which
12   is, I think, a red herring in this context.  But I
13   also heard him say, In defendant's software, which we
14   haven't seen yet.
15              And certainly there's -- and I believe
16   the deadline for supplementing interrogatory -- or
17   infringement contentions is 28 days after the claim
18   construction order.  And so we certainly envision, I
19   think, that we will be supplementing -- generally
20   supplementing these infringement contentions after we
21   get some discovery, after we see their source code,
22   after we do the things that we've been wanting to get
23   and that Your Honor is going to -- to order today.
24              So I don't think that -- this is a
25   little bit of a cart before the horse.  I think
```

Four Winds Interactive, LLC vs.                                    Discovery Hearing
22 Miles, Inc.                                                     March 22, 2017

Page 64

```
 1    there's certainly an initial -- you know, these are
 2    the initial infringement contentions that were
 3    presented pursuant to the local rules.  They were
 4    presented, I think -- I'm just looking for the date,
 5    Your Honor -- July 12th, 2016.  And certainly we
 6    envision we're going to supplement as discovery --
 7    you know, as we obtain discovery from -- from
 8    defendant.
 9                THE COURT:  Let me ask defendant.
10    Ultimately, doesn't this -- isn't -- ultimately,
11    doesn't this potentially go to a summary judgment
12    motion?
13                In other words, if what you're saying
14    is they can't even identify in -- if they can't even
15    identify in their infringement contention something
16    that actually infringes, isn't that really a summary
17    judgment issue that judge what they've identified as
18    an infringement -- and this would be for Judge
19    Krieger once she refers it to me, is what they've
20    identified as an infringement doesn't really
21    infringe?
22                MR. KOPPELMAN:  In the cases we cited
23    in the joint statement, courts have held that failure
24    to give adequate infringement contentions means that
25    your case shouldn't go forward at that point.  It's a
```

1    threshold matter.  And it's a little bit higher than

2    pleading.  You've got what you have to put in a

3    pleading, but then you need to show your cards and

4    you need to have a viable infringement theory.

5                 And we can debate noninfringement

6    arguments, and, yes, the fact that our, you know,

7    products don't have these features, yes, that is a

8    noninfringement position.  But the issue here is they

9    need to have an infringement position.  And I haven't

10   heard from the plaintiff what their infringement

11   position is with respect to how "between reception

12   and entrance" could possibly be a customized

13   instructional phrase within the patent.  That's not

14   an adequate allegation, and I haven't heard him

15   defend it.  And I don't think it's defensible.

16   That's the problem.  I think that's why we didn't

17   hear a defense of it.

18                 And it's -- it's -- you know, the

19   patent local rules say you have to identify each and

20   every, and there should be consequences for not being

21   able to do that.  You shouldn't just be able to go,

22   All right, well, we'll get some discovery and we'll

23   fix it and then, you know, eventually -- eventually

24   we'll get it right in our final contentions and then

25   you can later move for summary judgment.

Page 66

```
 1                    In order to move forward with one of
 2      these cases, at least in the Northern District of
 3      California and -- and the Southern District of
 4      New York it said this is sort of a gating issue, and
 5      you need to be able to identify, you know, where in
 6      the defendant's products these elements are
 7      satisfied.  And the Fed Circuit has said this is a
 8      Rule 11 issue.
 9                    THE COURT:  Well --
10                    MR. KOPPELMAN:  The Fed Circuit has
11      very clear Rule 11 law about comparing the claims and
12      every element of the claim to the accused
13      instrumentality.  And the contentions are supposed to
14      buttress that Rule 11 law of the Federal Circuit and
15      it's -- it's not there, and that's the issue for us.
16                    THE COURT:  Let me ask plaintiff
17      because I think they virtually conceded, but I think
18      your response was that there will need to be
19      supplementation on this.  How quickly can you
20      supplement it, to the extent the patent claim
21      survives a motion to dismiss?
22                    MR. POSTHUMUS:  Sure.  And I think
23      the -- we would like to supplement after we see their
24      source code.
25                    THE COURT:  And when -- I know the
```

Page 67

 1    parties may not know the answer to that.

 2                    MR. POSTHUMUS:  So I anticipate -- it's

 3    hard to -- I know that you're asking -- I think, Your

 4    Honor, maybe you're suggesting kind of how quickly

 5    can we supplement?

 6                    THE COURT:  Right.

 7                    MR. POSTHUMUS:  After we see the source

 8    code, and I think 30 days probably would be

 9    appropriate because of -- you know, working with our

10    technical expert and, you know, working through what

11    we need to work through in order to supplement.

12                    THE COURT:  Let me ask the defense.

13    How -- how quickly do you anticipate being able to --

14    especially since the parties are still working out

15    the source code component -- how quickly do you

16    anticipate being able to provide source code, or when

17    do you think this will occur?  And I know you may not

18    know the answer because there needs to be the

19    meet-and-confer first, but --

20                    MR. KOPPELMAN:  It's difficult to

21    estimate at this point.

22                    THE COURT:  Okay.

23                    MR. KOPPELMAN:  I don't anticipate a

24    lengthy delay.  We would need some time to meet and

25    confer --

 1                    THE COURT:  Right.

 2                    MR. KOPPELMAN:  -- figure out what's

 3    actually going to get produced, get our hands on it,

 4    put it on a computer for them to see pursuant to the

 5    protective order.  You know, ideally, we can be able

 6    to meet and confer very soon.  I'd like to start that

 7    today, so there's not unnecessary delay.  The

 8    defendant would like to stick to our discovery

 9    deadline.  We don't want this to just be --

10                    THE COURT:  Right.

11                    MR. KOPPELMAN:  -- litigation that

12    expands forever.  So we'd like to do this fast.

13                    THE COURT:  What --

14                    MR. KOPPELMAN:  And we've tried to be

15    diligent.

16                    THE COURT:  What is the discovery

17    deadline at this point?  Is it --

18                    MR. KOPPELMAN:  It's May 1st.

19                    MR. POSTHUMUS:  That's fact discovery.

20                    MR. KOPPELMAN:  Fact discovery is

21    May 1st.

22                    THE COURT:  Here's what I'm going do.

23    I'm going to order a supplement within 30 days.  I

24    will consider an extension, if necessary, if there's

25    delay in providing the source code.  Again, to the

 1   extent that any of this ultimately survives --
 2   whether, at least the patent -- I (indiscernible) to
 3   the patent whether that's survives the motion to
 4   dismiss.
 5           The parties will have my recommendation
 6   well before that 30-day period, and that may impact
 7   decisions that are made by -- you know, by counsel as
 8   to whether or not to -- whether or not this is
 9   necessary at that point.  To the extent there are any
10   objections, I doubt, seriously, you'll have
11   answers -- a ruling from Chief Judge Krieger within
12   that, because even if I get this out on Friday, 14
13   days from there is cutting us, you know, within only
14   two weeks into the 30-day deadline.  But I'm going to
15   order the supplementation within 30 days.
16           Again, I'll entertain a continuance of
17   that depending on how long it takes to get the source
18   code and depending on the recommendation that I get
19   out and where the parties are at that point.  Okay?
20           MR. KOPPELMAN:  Okay.  Thank you, Your
21   Honor.
22           THE COURT:  All right.
23           MR. KOPPELMAN:  My client thanks you
24   for your time and attention to the case.
25           THE COURT:  Oh, absolutely.  Is there

```
 1    anything further that -- that we can do on any of
 2    these here today?
 3               MR. KOPPELMAN:  There's -- there's two
 4    issues, one of which -- I mean, one of which we've
 5    asked for deposition dates and we're waiting on
 6    those.  I hope we'll get those soon.  But we need to
 7    get docs and we need to get those scheduled so we can
 8    try to get things done by May 1st.  That's hanging.
 9    And then we got new discovery responses last night
10    that we're going through.
11               THE COURT:  Okay.
12               MR. KOPPELMAN:  The thing that we noted
13    in them is the -- the responses to the RFPs, even the
14    ones that say they're producing docs, they don't say
15    when.  And Rule 34 says that you're supposed to
16    specify time for production and that's not there.  So
17    that's sort of open-ended at this point of when we'll
18    actually get docs responsive to the last set of RFPs
19    we served.  We can meet and confer with them --
20               THE COURT:  Okay.
21               MR. KOPPELMAN:  -- on that, but that is
22    out there.
23               THE COURT:  Okay.  And I'd encourage
24    that to be produced sooner rather than later,
25    especially with the May discovery cutoff at this
```

Page 71

```
 1  point.  This case has been pending for quite sometime
 2  at this point and, you know, I don't want it to get
 3  off the tracks here.  Okay?
 4              MR. POSTHUMUS:  Your Honor, we did
 5  raise an issue with regard to kind of the timing of
 6  the Rule 30(b)(6) deposition.  It's now scheduled for
 7  April 6th, but it was certainly envisioned -- we
 8  initially requested it in October and wanted a
 9  November deposition date.  We had a meet-and-confer
10  on that.  We gave them an amended notice to meet and
11  confer on, on December 9th.  That's the actual notice
12  that we're going to be deposing a corporate witness
13  of defendant on April 6.  But the timing of it is
14  such that it, essentially, pushed us to the end of
15  the -- you know, near the end of the discovery
16  period, and we were hoping to do this Rule 30(b)(6)
17  toward the start -- you know, toward the -- much
18  earlier than where we're at in terms of the discovery
19  schedule at this point.
20              Now, I know Your Honor has said that
21  you're -- you know, we have a lot of things going on.
22  A lot of --
23              THE COURT:  Right.
24              MR. POSTHUMUS:  -- moving parts but,
25  certainly, one of the things that we would want to
```

Page 72

1    have considered is a short extension of the fact --

2    the close of fact discovery deadline to account, you

3    know, for kind of the delay in providing their Rule

4    30(b)(6) witness.

5              THE COURT:  Here's what I'm going to do

6    on that.  I want the 30(b)(6) to go forward on

7    April 6, barring something coming up in between.

8    You'll have my recommendation by that point, which

9    may or may not impact the parties' views on -- on

10   discovery.

11             They'll have their documents by that

12   point and, if after all of that, if after April 6th,

13   once they've got their documents and you've had your

14   chance to depose, if there's good cause to extend the

15   scheduling order, whoever seeks it should file, at

16   that point, a motion to extend the scheduling order

17   and then I'll entertain it at that point.

18             I'm virtually certain it will be

19   referred to me and I'll entertain the extension at

20   that point once we have a clear picture of why it

21   needs to be extended, if it does need to be extended.

22   Okay?

23             MR. KOPPELMAN:  Your Honor, real quick.

24   You had earlier, I believe, perhaps, ruled that there

25   was good cause to do a modification.

1        THE COURT:  Only -- I haven't ruled

2   that.

3        MR. KOPPELMAN:  Okay.

4        THE COURT:  What I said is if -- if,

5   after you get your documents on March 31st, it's

6   determined that you can't go forward because you just

7   got 7,000 pages of documents that should have been

8   produced earlier, then I'd likely find good cause for

9   your extension of it.  But I just want to see what --

10  when the documents come in.  I know you want to keep

11  the deadline, so I don't want to make a ruling right

12  now --

13        MR. KOPPELMAN:  Okay.

14        THE COURT:  -- on whether or not there

15  needs to be an extension.  I want to see what comes

16  in on March 31st, whether you need it because of the

17  delay, whether they need it based upon the April 6,

18  30(b)(6) and see where we are at that point.  And so

19  what I'm saying is, any motion for extension should

20  be filed after April 6.

21        MR. KOPPELMAN:  Okay.  Okay.

22        THE COURT:  I think what I said was,

23  likely -- if you get 7,000 pages of documents on

24  March 31st, that should have been produced earlier,

25  I'd likely find good cause on your behalf to extend

Page 74

1    the scheduling order, the discovery deadlines.  But I

2    want to see where we are at that point.

3                     MR. KOPPELMAN:  Thank you --

4                     THE COURT:  Okay.

5                     MR. KOPPELMAN:  -- for that

6    clarification, Your Honor.

7                     THE COURT:  All right.  Anything

8    further we can do?

9                     MR. POSTHUMUS:  Not for your -- for the

10   plaintiffs.

11                    THE COURT:  Okay.  We'll be in recess,

12   then.  Thank you.

13                    MR. KOPPELMAN:  Thank you, Your Honor.

14                    THE COURTROOM DEPUTY:  All rise.

15                         * * * * * * * *

16                    (The within hearing was in conclusion

17   at 3:33 p.m. on this date.)

18                    I certify that the foregoing is a

19   correct transcript, to the best of my knowledge and

20   belief (pursuant to the quality of the recording),

21   from the record of proceedings in the above-entitled

22   matter.

23
     /s/ Kelly Mair                  March 30, 2017
24
     Signature of Transcriber        Date
25